Sternberg *v.* Wolff.

---

LAZAR STERNBERG et al., appellants,

*v.*

DAVID WOLFF et al., respondents,

[Filed January 29th, 1898.]

1. When, by reason of dissensions among the directors of a trading corporation, there is a deadlock in the management of its business by them, a receiver *pendente lite* may be appointed.

2. The court, in granting injunction against defendant, may impose as terms that an injunction relating to the same matter go against complainant.

On appeal from an order advised by Vice-Chancellor Pitney. (No opinion filed.)

*Mr. Robert H. McCarter* and *Mr. Louis Hood*, for Lazar Sternberg et al.

*Messrs. Riker & Riker* and *Mr. Charles D. Thompson*, for David Wolff et al.

The opinion of the court was delivered by

DEPUE, J.

On the 25th of July, 1892, Sternberg, Wolff and Misch became incorporated under the General Corporation act under the name of L. Sternberg & Company, with a capital stock of $100,000, divided into one thousand shares, the par value of which was $100 each. The object for which this company was incorporated was to carry on a general merchandise business.

At a meeting of the stockholders on the 26th of August, 1897, Sternberg was the owner of four hundred and ninety-nine shares; Rosa Sternberg, his wife, of one share; David Wolff one share, and Rosa Wolff, his wife, four hundred and ninety-nine shares; the situation being that one-half of the capital stock was held by Sternberg and his wife, and the other half by Wolff and his wife. At this meeting the by-laws were amended so that the board of directors should consist of four members, and the whole number of directors should be necessary to a quorum, and the four persons above named were elected directors; Lazar Sternberg was elected president, David Wolff being secretary and treasurer. Among the by-laws was the provision that Lazar Sternberg and David Wolff, and Henry Kern, the general superintendent, should not be subject to discharge or reduction of salary by any officer of the company, or by the board of directors, without the consent in writing of the majority in interest of the stockholders; that other employes might be discharged either by Lazar Sternberg or David Wolff, and new employes should be employed only with the concurrence of both Lazar Sternberg and David Wolff, unless otherwise ordered by the board of directors.

It is unnecessary to go into particulars; it is sufficient to say that after the meeting last referred to Sternberg and his wife, as the one party, were the owners of one-half of the capital stock of the company, and Wolff and his wife the owners of the other half. Difficulties and dissensions arose between these four persons, in which Sternberg and his wife, the one-half in number of the board of directors, were engaged on the one side, and Wolff and his wife, the other half of the board of directors, were engaged on the other side. By reason of these dissensions the management of the business by the board of directors was in a deadlock, although the company was largely engaged in the conduct of the business for which it was incorporated. In consequence of the disputes between these parties, in October, 1897, Sternberg and his wife filed a bill in the court of chancery against Wolff to restrain him, among other things, from exercising the duties of treasurer and from discharging employes, or interfering with the regular business of the company for his own personal ends, with a further prayer that if necessary a receiver might be appointed to take charge of said company and manage the same pending the decision of this suit. No answer had been filed by Wolff when the hearing on this application was had before the vice-chancellor, but Wolff in his affidavit states that he believes that the safety of the business demands the appointment of a receiver at least during the pendency of the litigation, and until an adjustment of the interests of the stockholders can be arrived at. Rosa Wolff was not a party to the bill, but she made an affidavit stating that she was the owner of half of the company's stock, and claiming that it was necessary for the protection of her interests that a receiver should be appointed for the corporation at least during the pendency of this litigation, and until the rights and powers of the officers and stockholders of the company shall have been adjusted and fixed under the order of the court.

This matter coming on for hearing before the vice-chancellor on bill, affidavits and counter-affidavits, the vice-chancellor advised an order dated November 6th, 1897, denying the application for a receiver, but ordering that, *pending this suit*, an in-

junction do issue enjoining David Wolff, the defendant herein, from drawing any promissory notes or checks of the company, or on behalf thereof, except for ascertained debts due by the said company, or from drawing any check to the order of himself, except for salary due him, after deducting all charges against him for rent and goods; the disputed items of $206 and $140 for banquet and stable account, respectively, not to be included in the ascertainment of said charges against him, the same being reserved until the final hearing of the case; and from discharging employes, except for cause, and that by the permission of the court; or from employing any new employes without the permission of the court, and from making or procuring to be made any list of the customers of said company; and from continuing to act as treasurer of the said company, unless within ten days from the date hereof he should file a bond in the penal sum of $20,000, conditioned for the faithful performance of his duties as treasurer of the defendant corporation; and that the complainant Lazar Sternberg be likewise enjoined from drawing any promissory notes or checks of the company, or on behalf thereof, except for ascertained debts due by the said company; or from drawing any check to the order of himself, except for salary due him after deducting all charges against him for rent and goods; and from discharging employes, except for cause, by the permission of the court; or from employing any new employes without the permission of the court; and from making or procuring to be made, any list of the customers of said company; and from inducing the employes of the company to fail to pay proper respect to the defendant and other officers of the company, and from inducing them to refuse obedience to their orders.

The vice-chancellor, in granting the injunction against Sternberg, seems to have gone upon the ground that the mutuality of the injunction was necessary to protect the interests of all the stockholders in the affairs of the company *pendente lite.*

It is within the power of the court of chancery, in granting to a suitor an injunction, to impose terms, and I have no doubt that the terms imposed in this case were such as it was in the

power of the court to impose, enjoining a defendant on the terms that an injunction relating to the same subject-matter should go against the complainant.

The business of the company, at the time these orders were made, in manufacturing and selling clothing, was very large, the company having its main place of business in the city of Newark and eleven branches located elsewhere in the state, and it is undeniable that the pendency of these injunction orders seriously interferes with the business of the company; and, in the judgment of this court, it is wholly impracticable for the court of chancery to take upon itself the control of the details of the business of this company in conformity with this injunction, as well as quite impossible that the business of the company should be profitably carried on without those who are engaged in the management of the business being allowed to manage and conduct the same upon business methods, rather than by the methods proposed by these injunction orders.

But it is apparent from the facts that appear in the bill and affidavits that some relief pending this litigation should be afforded in these proceedings. The two parties to the controversy—Sternberg and his wife on the one side and Wolff and his wife on the other side—are the owners each of one-half of the capital stock. These four individuals are directors of the company, and, by the by-laws, the whole number is necessary to make a quorum for the transaction of business. The dissensions between these two parties—Sternberg and his wife on one side and Wolff and his wife on the other side—have brought the affairs of this company to a deadlock, so far as any corporate action by the board of directors is concerned.

It may be assumed that the court of chancery has no jurisdiction to dissolve a solvent corporation and distribute its assets on the ground that the business of the corporation is improperly conducted by its board of directors, even though such mismanagement be with the concurrence of a majority of the stockholders; but the jurisdiction of the court of chancery to control the business of a company, especially a trading company, pending a litigation over the management and conduct of its business, must

necessarily exist, and, we think, pending a litigation such as that which is inaugurated by the proceedings in this case, a receiver may be appointed. Corporations such as the one now before us are mere trading companies, with a corporate organization for the convenience of conducting the business for which they were incorporated. Such a corporation has not the qualities of corporations created for public purposes. No reason appears why, in the matter of the control and conduct of its business, the corporation and its officers should not be within the control of the court of chancery to an extent corresponding with the control of that court over the business of a mere partnership.

The cases establish the power of the court in virtue of its general jurisdiction to preserve the subject of litigation *pendente lite*, though it may relate to the affairs of a trading company in form organized as a corporation. The two cases cited by the vice-chancellor in his second opinion are to that effect. *Featherstone* v. *Cook; Trades Auxiliary Co.* v. *Vickers, L. R. 16 Eq. Cas. 298, 303.* In the first case the complications in the affairs of the company arose out of a division in the board of directors, which made it absolutely impossible that the affairs of the company could be conducted with advantage. Vice-Chancellor Malins in that case says : " With regard to private partnerships, nothing is of more frequent occurrence than the quarrels of partners. If partners quarrel, oust each other from the management, or so conduct themselves that the partnership cannot go on with advantage, it is every day's practice for the court to interfere by injunction and appoint a receiver if necessary. With regard to public companies, I apprehend the same principle is applicable. If a state of things exists in which the governing body are so divided that they cannot act together, and there is the same kind of feeling between the members as there is frequently in the case of private partnerships, it is clearly within the rule of this court to interfere, and it will do so." The court in that case intervened by injunction and receiver simply to protect the property of the company, to continue, however, no longer than until a governing body was duly appointed. In the latter case the dissension was also in the board of direc-

tors, one set of which closed the office doors of the company's building, and the other set, with the aid of some laborers, broke open the doors with crowbars and forced the office open. The prayer of the bill was for the appointment of a receiver until the proper board of directors was constituted. The vice-chancellor placed the affairs of the company in the hands of a receiver *pendente lite* until a new governing body was appointed. The vice-chancellor's opinion states the principle to be that the court will not interfere with the internal affairs of joint stock companies unless they are in a condition in which there is no properly-constituted governing body, or *there are such dissensions in the governing body that it is impossible to carry on the business with advantage to the parties interested;* in such a case the court will interfere, but only for a limited time, and to as small an extent as possible.

Chancellor Runyon, in *Einstein* v. *Rosenfeld, 11 Stew. Eq. 309*, after citing the two cases already cited, did not dissent from the ruling of the vice-chancellor in those cases. He denied the appointment of a receiver on the ground that the business of the company was being carried on, and that there was no need of immediate interference on the part of the court for the protection of the property or business interests of the company. In *Archer* v. *American Water Works, 5 Dick. Ch. Rep. 33*, the present chancellor, after referring to the three cases above cited, said that "if the present directors of the company continue their dissensions so that the affairs of the company are not speedily attended to, upon a proper application I will care for the property, pending the determination of the suit, through the instrumentality of a receiver. Such action will be supported by precedents and authority. My interference, however, by injunction and receiver, will be limited to the imperative requirements of the present emergency." In an earlier case Vice-Chancellor Van Fleet said : " The power of this court to appoint a receiver of a corporation, either because it has no properly-constituted governing body or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, I think must be

regarded as settled, but I think it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution and only for such time and to such an extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders." *Edison* v. *Edison United Phonograph Co., 7 Dick. Ch. Rep. 620, 625, 626.* In *Fougeray* v. *Cord, 5 Dick. Ch. Rep. 185, 756,* this court did not deny the power of the court of chancery to appoint a receiver *pendente lite* for the management of the affairs of an incorporated company organized for the purposes of trade. The ruling of this court was that " the disturbance of corporate functions incident to a receivership are extreme powers, and may not be decreed by a court of equity when the specific acts complained of are capable of redress and complete restitution, and those apprehended fall within the ordinary jurisdiction by injunction." The order of the court of chancery appointing a receiver in that case was set aside by this court, not on the ground of a want of power in the court of chancery to resort to the proposed mode of relief, but on the ground that, in the judgment of this court, that power was in that instance improperly exercised.

That some redress should have been afforded under the bill filed in this case is apparent from the facts disclosed in the bill and affidavits. That the vice-chancellor granted injunctions which so completely interfered with the affairs of the company as to make the conduct of its business by its officers in ordinary business methods impossible, and assumed the administration of its business affairs to such an extent as to be utterly impracticable, affords a convincing argument for such relief as is practicable through the intervention of the court of chancery under the circumstances. Such relief, we think, could be afforded only by the appointment of a receiver *pendente lite.*

On both appeals the injunction orders should be vacated, and the record should be remitted to the court of chancery, to be proceeded with in accordance with these views.

Sternberg v. Wolff.

COLLINS J. (dissenting).

While I agree with the majority of this court that the situation disclosed by the affidavits called for the appointment of a receiver on the application of either party, I also think that, pending such appointment, it was justifiable under the affidavits to order an injunction forbidding David Wolff to further act as treasurer of the corporation until he should give bonds, and restraining him from making such drafts and notes as were interdicted. Such an order might justly have been made conditional upon submission by Lazar Sternberg to like interdiction. A modified injunction of this tenor seems still unobjectionable, and may be necessary.

As to concurrence with opinion as to appointment of receiver :

*Yea*—Collins, Depue, Dixon, Lippincott, Ludlow, Adams, Hendrickson, Nixon, Vredenburgh—9.

*Nay*—The Chief-Justice, Garrison, Gummere, Van Syckel, Bogert—5.

*To reverse and modify*—The Chief-Justice, Collins, Gummere, Ludlow, Van Syckel, Bogert—6.

*For reversal*—Depue, Dixon, Garrison, Lippincott, Adams, Hendrickson, Nixon, Vredenburgh—8.

*For affirmance*—None.

NOTE.—When the cause came back to the court of chancery and a motion was made to appoint a receiver, that court, acting upon the state of facts that existed at and immediately before the motion was made, refused to appoint a receiver, notwithstanding the opinion of the court of appeals. See *N. J. Law Journal, Vol. 21, p. 74.*—REP.