# Court of Appeal, Parish of Orleans.

## No. 3759.

## S. D. MOODY & CO., LTD., vs. SEWERAGE AND WATER BOARD, et al.

1. The validity of the registry of a "certificate of assessment or performance "issues under the provisions of Act 73, of 1876, the registry being made in order to preserve the lien and privilege accorded by that act, on abutting real properties, for the cost of works of public improvement, is not impaired or affected by the mere fact that an erroneous rule of calculation was adopted by the public officials charged with the duty of apportioning the cost of the work of public improvement against the respective abutting real properties, and the insertion of that erroneous amount in the certificate.

2. If evidence, dehors the recorded certificate, has established the correct amount which the abutting real property owes, the undertaker who has performed the work under his contract with the municipal authorities, is entitled to recover that amount with recognition of his lien and privilege on the property owning same, and this is the rule even as to third parties who may have acquired the property subsequent to the recordation of the "certificate of assessment or performance; "provided, however, that as to such third persons, no recovery can be had in any amount in excess of that stated in the recorded certificate, although the corrected calculation may show a greater amount to be owing.

3. Under the textual provisions of Sec. 63 of Act 85 of 1888, the registry of a tax deed to property sold for taxes under that act, operates the cancellation of only conventional and judicial mortgages. The lien and privilege accorded under Act 73 of 1876, to secure the cost of work of public improvement under a Local Assessment, is not cancelled by operation of a tax sale made under the act of 1888. Inclusio unius est exclusio alterius.

Appeal from Civil District Court, Division "D."

Buck, Washe & Buck, for Plaintiff and Appellant.

Omer Villere, J. Zach Spearing, for Defendant and Appellee.

MOORE, J. This was an action in rem to enforce a local assessment for street paving.

The property sought to be held for its prorata of the cost of paving is situated in the City of New Orleans and the work was done by virtue of the City's contract with plaintiff under the provisions of its then City Charter.

Alexander Turegana owned the property at the time the work of paving was commenced, when it was completed, and when, later, the City Engineer's certificate of acceptance and approval of the work was recorded. Turegana having defaulted in the payment of the city taxes assessed against this property for the years 1893 and 1894, the city seized and sold the property therefor, adjudicating it to Thornwell Gachet on the 25th day of December, 1897; the formal deed of sale being executed on the 10th of January, 1898.

Gachet, on the 4th of March, 1900, conveyed the property by conventional sale, to the Drainage Commission of the City of New Orleans, it then passing into the possession of the Sewerage and Water Board by virtue of Act No. 111 of 1902, known as the "Merger Act." Under this statute, and although the Sewerage and Water Board, as an instrumentality of the city, has the custody of and is using and employing the property in the execution and furtherance of the city's system of drainage, the title thereto verts in the City. Both are, however, made joint defendants herein, and, as such, they called Gachet in warranty to defend the suit and prayed for the rendition of such judgment in their favor and against Gachet as might be rendered in favor of plaintiff and against the said property.

Gachet's answer puts at issue the legal existence of plaintiff's asserted pledge of and lien and privilege on, the property to secure its apportionment of the cost of the paving; the grounds urged being the want of "legal and proper registry of the certificate of assessment as required by law," and that if proper registry was ever made, it was cancelled and erased, and is now nonexistent, as the result of the City's tax sale of the property made in 1897, as stated.

I.

By the 3rd Section of Act No. 73, approved March 30th, 1876, the lien and privilege accorded by the act to the undertaker on the several real properties abutting the street on which the work of paving was done, to secure their respective apportionment of the cost of the work, is presumed by recording: "the certificate of as-

140

sessment or performance of the City Surveyor in the office of the Recorder of Mortgages, within sixty days after its issuance." In the instant case a certificate, in the usual form of that officer for such purposes, was duly issued on the 9th December, 1896, by the Commissioner of Public Works, and approved by the City Engineer, and certifying to the completion, acceptance and approval of the work under the contract stated therein. Three days later, Dec. 12th, 1896, this certificate of performance was duly recorded in the office of the Recorder of Mortgages. Accompaning the certificate of performance, and as a part of it, is the apportionment of the cost of the work to this particular property. The rule of apportionment was that adopted by the City's officials in all similar cases, up to the time of the decision in Watt's case, reported in 51 A., 1345, *id est* by taking the total cost of the squares respectively, where the property is situated and imposing contribution according to the frontage of each particular property, instead of taking entire cost of the paving of the street and imposing contribution according to the frontage of each particular property. Subsequently, however, to wit, on the 4th of August, 1902, the "pay certificate," as it is sometimes called, was made anew and was based on the proper apportionment. This latter document was never recorded. It reduces the original party certificate from $270.25 to $228.14, which is the amount sued for.

The argument on this branch of the case is, substantially, that in creating a lien of this character the law must be strictly followed otherwise no lien is created; that no lien or privilege can affect third persons unless recorded; that the fixation of the cost of the work due each abutting real property is, technically, an "assessment;" that were the "assessment" is erroneous it is no "assessment" at all; that recording the "certificate of assessment," and that, hence as the certificate recorded in the instant case was of an erroneous assessment, no lien and privilege existed against the property to secure payment of its contribution of the cost of the paving.

It may be doubted that, not only laws creating liens and privileges of this character, but laws creating liens and privileges of any character, are to be strictly followed; and equally true is it that no lien or privilege can affect third persons unless recorded

in the parish where the property to be affected is situated, Con. Art. 186. But here the question is not whether the statute of 1896, under which the plaintiffs claim them, accords a lien and privilege to secure the property's contribution towards the payment of the paving, for unquestionably the statute does; nor whether, without registry, the lien and privilege affect third persons, for this is not questioned by the plaintiffs. The question that is presented however is whether the certificate which was recorded answers the requirements of the law. If it does it follows that, by recording it, the lien and privilege is effective against third persons.

The only statute indicating what shall be recorded in cases of this character so as to preserve the lien and privilege, is the statute *supra,* and we have seen that as to this matter, it declares simply "that it shall be sufficient to record the certificate of assessment of performance of the City Suryeyor, etc., etc."

The word "assessment" as employed in the statute is not, as it never is, when used in connection with the imposition of a charge on property to pay the cost of a local improvement predicated upon the principle of equivalents or benefits,—of the same signification as "assessment" when used with reference to the general burden of taxation imposed for public purposes, or, more briefly, for the supply of the public treasury. In the latter case—taxation proper—it is sometimes used as a word of general import and then has substantially the same meaning as tax or "taxation," or as synonymous with the word "levy" in the sense of being merely descriptive of the act of levying a tax and again it is used as signifying the official valuation of property, profit or income for the purpose of *taxation.*

When used, however, in, or in reference to, statutes of the character of the statute under consideration, it then has reference to and is intended to indicate and identify a governmental scheme, or plan, or policy, of forced contribution—as contradistinguished from a tax for benefits accruing to real property by reason of public improvements, and unrestrained in its operation, by the constitutional rule of uniformity or limit.

It is never employed in this case in the sense of an official fixation of the apportionment of the cost of the work of public

improvement due by the respective abutting real properties; nor was it, in our opinion, intended to have this meaning in the statute, *supra*.

The words "or performance," immediately following the word "assessment" in the statute itself, clearly indicates that what the law-maker intended should be recorded was a certificate testifying that a work of public improvement, describing its character, had been ordained by the municipal authorities; that it had been completed by the undertaker; that it had been approved and accepted by the proper public officials, and that the particular real property was within the territorial limits of the work and abutting it, and was consequently liable for its prorata share of the cost. All this is shown by the certificate; it is in every sense a "certificate of assessment or performance," *id est,* a declaration of the adoption of a scheme of local improvement and of the completion and acceptance of the work and this is all the statute demands. It does not require that the amount due by the respective abutting properties should be stated in the certificate with absolute exactness; indeed the act does not specially require that it should be stated at all, but if it did, and the amount was inaccurately stated we cannot conceive that this mere fact would defeat the lien and privilege, and thus permit the owner of the property to enrich himself at the expense of the undertaker who has done the work under legal authority. In New Orleans for use etc. vs. Ferriere, et als. 17 An. 183, which was also a paving case, the account was indefinitely stated, but the Court held that notwithstanding this fact; "the property, in whose hands whomsoever it may have been, "was legally bound by the registry.

The object of registry is public notice with reasonable certainty of the substantial particulars; Ellis, vs. Smith, 2 A. 251; Bonnafe, vs. Lane, 5 A. 225; Suc. Pate 6 A. 242; notice that the property is burdened with an incumbrance of the nature and character stated in the registry, it may be of mortgage, or of pledge, or of lien, or of privilege, and no error in the statement of the amount of the claim which the incumbrance is intended to secure, can change or effect the fact that public notice of the existence of the encumbrance was given; although it is that as to third persons no *greater* amount could be recovered

143

than that noted in the recorded instrument.   Walden, vs. Grant, 8 N. S. 570.

When therefore the apportionment in cases of the instant character is erroneously made, and the amount of the contribution is larger than it should legally be, the owner of the property charged therewith, may, when sued therefor, show that fact, and if the true and correct amount due is established by evidence, the lien and privilege to secure the corrected amount will be adjudged to exist.

In Mullan, vs. His Creditors, 39 A. 397-9 there was a variance between the tax bills declared on and the certificates of the assessors which was made one of the grounds for refusal to pay.   To this objection the Court said.   "If there be a variance between the bills and the certificate of the assessors, as no doubt thereis, to the extent of $10,000 neither the party assessed nor his syndic can complain of it, for the reason that the difference exists against the City ; the bills being for that sum *less* than the amount at which the property appears to have been assessed."

It is said that Barber Asphalt Co., vs. Watt, 51 A. 1345 affirms the nullity of certificates simular to the one in the instant case, and that as a consequence, it is argued, the registry of such null certificates does not operate to perserve the lien and privilege so as to affect third persons.

The views which we have expressed here are in full accord and harmony with those expressed in Watt's case.

There, as here, the certificates were erroneous as to the apportionment ; this error was patent on the face of the certificates. Their value, therefore, as *prima facie* evidence of the amount due, was impaired.   No corrected pay certificates were obtained, or, if obtained, introduced in evidence, and no evidence of any character was offered to show what the actual measurements were and what was the entire cost of the paving of the street so as to enable the Court to ascertain what was the correct amount for which the property was liable.   In this condition of the record the Court held that as these pay certficates "did not evidence an enforceable claim," and as there was no other evidence tendered as to the claim, plaintiff was properly *non suited*.   "What the defendant owes," said the Court, "is his proportion, according to the running

foot front of three-fourths of the entire cost of paving Calhoun street, from St. Charles Avenue to Claiborne Street, excluding the intersections, and plaintiff's case is not made out against him *until it is shown by the evidence what his proportion is. Not being shown plaintiff was properly non-suited,* (italics ours) and as this defense is matter of law, it need not have been set up as a special plea, as plaintiff contends, but can well be taken advantage of under the general denial by defendant of liability as charged in the petition of plaintiff;" (p. 1351) adding, (p. 1355) "while sustaining the decree appealed from plaintiff's right to proceed against the property of defendant and *intervenor,* Mrs. Richardson, according to the views herein expressed, is reserved."

It will be thus perceived that the Court did not consider the erroneous apportionment as fatal, either to the right to recover the amount actually owing, if that amount had been established by proof dehor the certificate, or to the existence of the lien and privilege, as the Court specially reserved plaintiff's right to proceed against the property of the intervenor, Mrs. Richardson. who was a third person to whom a portion of the property had been conveyed, and who had intervened in the suit asserting her ownership to a portion of the property and contesting, jointly with defendant, plaintiff's action. That case turned entirely upon a question of proof. The evidence which was lacking in Watt's case, was administered in the instant case, for here "it is shown by the evidence what the proportion is."

## II.

Whether the purchaser at a tax sale takes only the interest of the owner in whose name the land is, or ought to have been, assessed, burdened with all the encumbrances existing thereon at, or a given period prior to, the sale; or whether the purchaser takes it therefrom, is regulated by statute.

There is no common law rule which makes the levy of taxes, *ex propio vigore,* a lien on the property, a lien on the property, of the taxpayer, nor does an obligation to assess taxes give a lien on the property upon which such taxes should be assessed. Such liens owe their existence wholly to statute, and their dura-

tion, limitation and priorities must be determined by the statute creating them.

As it is within the power of the legislature to make the tax lien superior to any other security, mortgage, encumbrance or lien arising either before or after the assessment of the tax, so also is it within its constitutional power to declare that at once the property is adjudicated for taxes, or after a fixed and given time in the future, and under such conditions as it may impose, the property passes to the purchaser free of all encumbrances of every nature; or that it passes subject to them; or that it passes subject only to a certain class or character of encumbrances; or that only a certain class and character of encumbrances shall be cancelled by the sale. In the exercise of its power the Legislature of this State did, by Sec. 33 of the "Revenue Law" of 1888, Act No. 85, approved July 12th, 1888, this being the law under which the city taxes due on the property in question for the years 1893 and 1894, were levied and under which the property was sold by the city on the 25th of Sept. 1898, enact: "that from the day said tax roll is filed in said mortgage office it shall act as a lien upon each separate piece of real estate thereon assessed; shall be subject to a legal mortgage after the 31st day of the current year for the payment of the tax due on it, but not for any other tax, which mortgage shall prime and outrank all other mortgages, privileges, liens, encumbrances or preferences, except tax rolls of previous years."

In section 63 of this act—and whether because the law makers conceived that, unless otherwise provided by statute, a tax title conveyed to the purchaser of the property sold for taxes, nothing but the interest of the delinquent tax payer, the recorded burdens on the property remaining extant thereon, desired, therefore, to make such sales operate as a cancellation of a certain class of recorded encumbrances on the property, or, whether they believed that a tax title, *ex propio vigore,* and without legislative will, operates the cancellation of *all* encumbrances of every class, nature or kind, and, therefore, wished to *limit* and *restrict* the cancellation to only a *specific class or character* of recorded encumbrances, —it is provided that after the expiration of the period of redemption, which is fixed at one year, beginning on the day the tax

deed is filed for record in the conveyance or mortgage office in the parish in which the property is situated, the registry of such tax deed, if the property be not redeemed, "shall operate as a cancellation of all *conventional* and *judicial mortgages,* and it cancellation of all conventional and judicial mortgages, and it shall be the duty of the sheriff or tax collector to notify the mortgage creditor's ten days previous to such sale."

It is under this section of the act that the defendants and the warrantor base their contention that plaintiff's asserted lien and privilege was cancelled as the result and by operation of the tax sale, *supra.*

The argument on this branch of the case, to quote from the brief of the warrantor, is "that article 3286 C. C. provides that there are three kinds of mortgages, i. e., Conventional, Legal and Judicial; that a paving contract is clearly not a legal mortgage, nor is it a judicial mortgage, therefore it must be conventional; that the very life and beginning of the asserted encumbrance is the contract between the plaintiff and the city, the latter acting for and on behalf of the owner of the property in question and those simularly situated; that being conventional it comes within the letter and spirit of the statute and was therefore cancelled and wiped out by the tax sale. The fundamental error of this argument is that it confounds a "lien and privilege" with a "mortgage." There is a vast difference in law between them. Plaintiff here are asserting no "mortgage" on the property, therefore no question arises as to the *kind* of mortgage which they have. What they claim is that, flowing from the nature of their contract with the City and from the law applicable thereto, they have "a real charge in and upon the property," a "pledge" thereof, and "a lien and privilege thereon," and this is precisely what is granted them by Sec. 3, of Act No. 73 of 1896 which provides, *inter alia,* "xxx. That the cost of said improvement, paving or repairing, grading or regrading, due as aforesaid by the owner or owners of the abutting real property shall be and is hereby constituted a real charge in and upon said real property, to whomsoever same may be transferred and conveyed, and the same shall be deemed considered and treated as *pledged* for the payment of said cost xxxx, that said cost of said improvement etc., shall

constitute a *lien* or *privilege* upon said abutting property till paid xxx."

As we have seen the Revenue Act of 1888, supra, does not make the tax sale operate the cancellation even of *all* mortgages, but only to all *conventional and judicial* mortgages. The legal mortgage it would appear is excluded. Harney vs. Quaglina 1, Court of Appeal 230, and beyond all doubt "pledges" "liens" and privileges" are not included. *Inclusio unius est exclusio alterius.*

To the argument that it is repugnant to the spirit of the law that a tax sale should not operate the cancellation of every burden or encumbrance on the property, the answer is that it is not so nominated in the law *quoad* tax sales made under the Revenue Law of 1888, supra, and we are admonished that when a law is clear and free from ambiguity, as the section of the Revenue Law cited is, the letter is not to be disregarded under the pretext of pursuing its spirit, C. C. 13.

However, it is manifest that the limitation in the revenue act of 1888 to the two specifically indicated character of mortgages, which the act declares shall be cancelled as the result of the registry of a tax deed to property sold for taxes under that act was inserted and incorporated therein, *ex intustria* by the lawmakers. This is evidenced and made patent, at least by analogy, when we came to consider simular and contemporaneous legislation concerning the sale of property, not under revenue act for the collection of delinquent taxes, as in this case, but concerning the sale of property owned by the State, the titles to which it had acquired as a result of forfeiture for the non-payment of taxes. Such an act is the act which has come to be known as the Ironclade act," being No. 80, of the acts 1888, and approved on the same day that the Revenue Act of that year was approved. This is an act providing for the sale of property bid in and *adjudicated to the State* for the taxes of 1880 and subsequent years. It provides that within two months after the expiration of the year in which the property must be redeemed, the property so adjudicated to the State shall be offered for sale; but it also provides that the title, which it will thus give to the purchaser, shall operate to a far greater extent in the way of extinguishing and cancelling burdens and encumbrances on the property so sold, than

148

where the property—not owned by the State, but owned by the delinquent taxpayer,—is sold under a revenue act for the purpose of gathering the taxes due thereon. Here is the section referred to.

"Section 5: That alll sales under this act shall vest in the purchaser an absolute and perfect title to the property conveyed in the deed of sale, without any claim thereto by any former owner and *free of all mortgages, liens, privileges and encumbrances whatsoever,* except all city and municipal taxes."

We need not inquire into the motive or reason which influenced the legislature in making this difference in the respective tax deeds under the two acts, supra; but if a consideration is to be sought for it is to be found in the simple fact that in the sale, by the State, of property forfeited to it, the purchaser may be required to pay excess of the amount of taxes and penalties for the non-payment of which the land was forfeited. Therefore, in this event, the purchaser is fairly entitled to full protection. Whereas, when property is sold for the purpose of collecting the taxes due thereon, the sale cannot be made for any amount whatsoever beyond and in excess of the taxes. penalties and costs due thereon, which may be in infinitesimally small as compared with the value of the land. In this event the same measure of protection, so far at least as encumbrances on the land are concerned, is, and out not to be given the purchaser.

## III.

It is urged in argument, but not averred in the pleadings, that forasmuch as the property sought to be affected by the lien is not so described in the recorded certificate as to be located and identified, the lien is therefore inoperative. There is not the slightest merit in this contention whatsoever. First: Because character of the defense set up in the answers of the defendants and the warrantor, are predicated on the theory that the defendants as the present owners, and the warrantors as the former owner of the property as described, had the right to urge them. Reed vs. Crantors, 39 A. 115-125; and Second: Because the pleadings filed by the defendants and the warrantor negative

149

all suggestion that the description of the property is not such as to enable its location and identification. It was, apparently, sufficiently described in the petition to enable, at least, these parties to identify and locate it, forasmuch as the defendants in this answer specially admit that "they are the purchasers of the property described in the petition having purchased same from Thornwell Gachet;" and Gachet in his answer to the call in warranty "admits that he did sell the property referred to in the petition and in the call in warranty."

Our esteemed brethren of the lower Court resolved the case against the plaintiffs, but we are not advised on what grounds as the reasons assigned therefor were orally delivered. The judgment, however, is in error and must be reversed. Plaintiffs are entitled to their judgment as prayd for, and it is conceded that in this event the defendants are, in their turn, entitled to a like judgment against Gachet, the warrantor, resulting from his conventional warranty; and it will be so ordered.

It is therefore ordered and decreed that plaintiffs, S. D. Moody & Co., Limited, do have judgment against the joint defendants the City of New Orleans and the Sewerage and Water Board for the City of New Orleans in the full sum of two hundred and twenty-eight 44/100 dollars, with six per cent per annum interest thereon, from Dec. 9th, 1896, until paid, and one 50/100 dollars for recording the certificate of assessment or performance in the recorder's office of the parish of Orleans, and costs with recognition of petitioners lien, privilege and right of pledge, for the payment of this Judgment, on the property of said defendants described in said recorded certificate and in the petition, and upon the proceeds of the sale of said property by privilege and preference; the said lien, privilege and pledge being declared in full force and executon from the 9th Dec. 1896; that this judgment so far as concerns the defendants be restricted in its execution to the said described property, no personal judgment against the said City of New Orleans and the said Sewerage & Water Board being meant or intended hereby.

It is further ordered, adjudged and decreed that the defendants, the City of New Orleans, and the Sewrage & Water Board,

jointly have judgment on their call in warranty against Thornwell Gachet, their warrantor, in the full sum of two hundred and twenty-eight 44/100 dollars with six per cent per annum interest thereon from Dec. 9th, 1896, until paid and the additional sum of one 50/100 dollars and the costs of Court.

Jany. 9, 1906.

Rehearing refused Feb. 5, 1906.

Writ granted March 19, 1906.

Judgment affirmed by Supreme Court June 27, 1906.