KATZ and another, Appellants, vs. DE WOLF and others, Respondents.

*November 20—December 10, 1912.*

*Corporations: Control by courts: Deadlock in affairs: Receivers: Appointment pendente lite: Appeal: Discretionary order: Error as to existence of power.*

1. The power of the circuit court to appoint a receiver for a corporation exists under its general equity jurisdiction, and is not limited to cases coming within the express provisions of the statutes.

2. The rule that where a court refuses to exercise a discretionary power on the erroneous assumption that the power does not exist the order appealed from should be reversed, has no application to cases in which there is no sufficient ground shown for the exercise of the court's discretion, nor to cases in which the court decided that, even if it had the power, it would in the exercise of its discretion deny the motion.

3. The mere fact that a deadlock exists between contending groups of stockholders and that charges of misconduct are made against the group in control, does not authorize a court of equity, upon affidavits and in advance of a trial upon the merits, to appoint a receiver for a solvent corporation and thereby wrest the control of its property and business from its duly elected officers, where such charges of misconduct are denied and where there is no imminent danger of loss of the corporate property or of any other injury to the moving party which cannot be fully compensated by the final decree.

[4. Whether or not a mere deadlock in the affairs of a corporation, caused by contending factions among the stockholders, preventing an election of directors and a harmonious conduct of its business, would be sufficient ground for a court of equity by final decree to dissolve the corporation, appoint a receiver, and direct a sale of the corporate property and a distribution among the shareholders, not decided.]

APPEAL from an order of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge.  *Affirmed.*

The appeal is from an order denying a motion for the appointment of a receiver *pendente lite.*

For the appellants there was a brief by *Frank M. Hoyt,* attorney, and *Glicksman, Gold & Corrigan,* of counsel, and oral

argument by *Mr. Hoyt* and *Mr. Nathan Glicksman.* They contended, *inter alia,* that the power of the courts to appoint receivers for corporations is not confined to the cases expressly provided for in the statutes, but is inherent in their general equity jurisdiction, and that the facts of this case presented a proper occasion for its exercise. *State v. Milwaukee E. R. & L. Co.* 136 Wis. 179, 116 N. W. 900; *Gores v. Day,* 99 Wis. 276, 74 N. W. 787; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Adler v. Milwaukee P. B. Mfg. Co.* 13 Wis. 57; *Boothe v. Summit C. M. Co.* 55 Wash. 167, 104 Pac. 207; *State ex rel. Conlan v. Oudin & B. F. C. M. & M. Co.* 48 Wash. 196, 93 Pac. 219; *Weymouth v. Oudin,* 56 Wash. 315, 105 Pac. 1027; *Gibbs v. Morgan,* 9 Idaho, 100, 72 Pac. 733; *Columbian A. Club v. State,* 143 Ind. 98, 40 N. E. 914; *Sternberg v. Wolff,* 56 N. J. Eq. 389, 39 Atl. 397; *Einstein v. Rosenfeld,* 38 N. J. Eq. 309; *Merrifield v. Burrows,* 153 Ill. App. 523; *Miner v. Belle Isle I. Co.* 93 Mich. 97, 53 N. W. 218; *Sheridan B. Works v. Marion T. Co.* 157 Ind. 292, 61 N. E. 666; *Lawrence v. Greenwich F. Ins. Co.* 1 Paige Ch. (N. Y.) 586; 3 Cook, Corp. (6th ed.) § 746; 34 Cyc. 96.

For the respondents there was a brief by *Adolph Huebschmann,* attorney, and *Thomas H. Gill,* of counsel, and oral argument by *Mr. Huebschmann.*

TIMLIN, J.    The plaintiffs own one half of the shares and the defendant *John E. De Wolf* in his own right and as administrator of William De Wolf owns half of the shares in the defendant *Avenue Rent Company,* a stock corporation organized under the general statutes of this state and having an authorized capital stock of 500 shares of the face or par value of $100 each.    The corporation is entitled to but three directors.    The defendant *John E. De Wolf* is now a director, president, and treasurer, and the plaintiff *Voss* is a director, and the shareholders are unable to agree upon or to elect a

third director or to agree upon the proper manner of conducting the corporate business. This deadlock was brought about as follows: The business of the corporation is buying, selling, and dealing in real and personal property, leases and leasehold interests, constructing buildings, renting and leasing buildings, etc. It owns a ninety-nine year lease of a certain parcel of land with buildings and improvements, and sublets the same. By the articles of organization the president has general supervision of the business and affairs of the corporation, subject to the control of the board of directors. The president and treasurer must be directors, while the secretary need not. The treasurer is to have the custody of the moneys of the corporation and disburse the same as prescribed by the by-laws or as authorized by the board of directors. A by-law requires that all money belonging to the company shall be by the treasurer deposited in such bank as the board of directors shall approve, to be thence drawn out by checks by both president and treasurer. There was originally a smaller amount of capital stock and three shareholders, each having an equal number of shares, but by purchase one shareholder was eliminated and the capital stock was increased, and it came about that the principal persons interested as shareholders were *Herman Katz* and *John E. De Wolf.* The plaintiff *Voss* holds one share under *Herman Katz,* and William De Wolf held one share which he received from *John E. De Wolf.* With the consent of *Mr. Katz, John E. De Wolf,* William De Wolf, and *Mr. Katz* constituted the board of directors. The offices were so distributed that *Mr. Katz* was president, *John E. De Wolf* was vice-president and treasurer, and one *Reitman,* an employee of *John E. De Wolf,* was made secretary. *John E. De Wolf* resided in Milwaukee and was more or less engaged in the real-estate business. *Mr. Katz* was required or disposed to spend a great deal of time in Europe in pursuit of his regular business. *Mr. Katz* resigned as president and *John E. De Wolf* resigned as vice-

president and he was elected president, and William De Wolf was elected vice-president, all with the consent of *Mr. Katz.* It was agreed between them that *John E. De Wolf* should have charge of the corporate affairs, which consisted of making subleases, collecting rents, paying for repairs, insurance, and taxes, and such like. For this *John E. De Wolf* was to receive as full compensation five per cent. of the amount of rent received. So far there is no dispute, but at this point the defendant denies that the five per cent. was agreed to be in full compensation. Returning from Europe *Mr. Katz* found that in addition to this five per centum on rents collected *John E. De Wolf* had charged to the corporation two per cent. on the total amount of the leases for procuring tenants or negotiating leases, such commissions amounting to $2,497.50. This the complaint avers to have been done fraudulently, without right or consideration, with intent to defraud, etc. The answer avers that it was pursuant to the agreement between the parties and a customary charge in Milwaukee. *John E. De Wolf* had been collecting the rents and mingled them as collected with his own funds, and refused to deposit the money in bank as required by the by-laws. This is met by a claim that *John E. De Wolf* collected these funds as real-estate agent and turned them over thereafter to himself as treasurer of the corporation, and that no bank had been designated by the directors, but that he had nevertheless deposited them in a bank. It is averred in the complaint that *Katz* and *De Wolf* met on January 14, 1911, and agreed upon a settlement of the above matters, whereby *John E. De Wolf* should continue to receive five per centum on rents collected and should have but one per centum for commissions on leases in question, making $1,248.75 instead of $2,497.50, and also should have one per cent. on certain leases negotiated by him thereafter, with provisions for a conditional refund and that all moneys remaining on hand after paying the necessary disbursements should be divided equally

between them, and quarterly reports made and the money divided each quarter, and that *Mr. Katz* should resign as a director and *Arthur Voss,* his bookkeeper, be elected in his stead, and that, all the stock being represented at this transaction, the meeting should be written up as a stockholders' meeting voluntarily held, and thereafter a resolution should be passed by the directors embodying this agreement. It is then averred that *De Wolf* failed to carry out this agreement in several particulars and that he did not enter up the same correctly and did not pay over, etc., whereupon on April 11, 1911, *Katz* rescinded the agreement and relies on the original transaction as a fraudulent conversion of corporate funds, misconduct in office, etc.

On November 7, 1911, William De Wolf died, leaving a vacancy in the board of directors, and *John E. De Wolf* was appointed his administrator. The charges of misconduct are, therefore, (1) the commingling of corporate with personal funds; (2) retaining wrongfully the commission on leases; (3) failure to render an account of all funds of the corporation to the stockholders; (4) failure to keep the corporate funds in a bank designated by the directors. Each of these charges of misconduct is met by the answer in denial or by new matter in the way of explanation and denial.

The complaint demands relief appropriate under sec. 3237, Stats. (1898), namely: that the defendant *John E. De Wolf* be removed from his office as president and treasurer and these offices declared vacant; that a time and place be fixed by the court for the holding of an election to elect a successor as director of William De Wolf and to elect a proper governing body and board of directors of said corporation; that *John E. De Wolf* be required to account for, pay over all moneys of the corporation in his hands, etc., and that he be required to deposit in the name of the corporation moneys belonging to it in some bank, and that a receiver be appointed to take charge, possession, and control of the business, prop-

erty, and affairs of said corporation with the usual power of receivers in such cases to conserve such property and the assets. In addition to the foregoing there is a prayer for relief not expressly authorized by sec. 3237, *supra*, viz.: that in the event that no board of directors can be elected, a receiver of the corporation be appointed with the usual power of receivers in such cases made and provided to sell and dispose of the property and wind up the affairs of the corporation. There is no claim made that either the plaintiff *Katz* or the defendant *John E. De Wolf* or the corporation is irresponsible or insolvent.

It is contended by the appellants that the learned circuit court refused to appoint a receiver on the sole ground that he lacked the power so to do. The order appealed from states that, "solely for the reasons stated in the decision of the court, ordered that plaintiffs' motion to appoint a receiver be and the same hereby is denied." The learned circuit court in the opinion mentioned stated:

"I think the statutes of this state have superseded the common law and that the authority to dissolve the corporation and appoint a receiver must be found to expressly exist by statute. I do not believe that the court has power to administer the affairs and assets of a perfectly solvent corporation engaged in business. Jurisdiction to do so only exists when facts are shown which bring the case under the provisions of the statute."

He also said in closing this opinion:

"When it is made to appear to the court that the governing body of the corporation is carrying it on successfully and with profit to the stockholders, that the corporation is solvent, and, as in this case, that the management of it does not involve the employment of a large force of clerical assistants or the expenditure of large sums of money, then there is no danger of mismanagement in that behalf, and that the managing officer is abundantly able to respond for any losses that there may be on account of his mismanagement, it would not be proper

for the court to appoint a receiver. The motion will therefore be denied."

The situation then is that the court decided by the order appealed from that he had no power to appoint a receiver in this case and that he would not appoint one if he had the power. Upon the proposition that he lacked power the learned circuit court erred. There is a class of cases authority for the proposition that when discretionary power exists in the court to grant or deny a motion, if the denial was based on the erroneous assumption that the power did not exist the order must be reversed and the case remanded to the circuit court in order that the discretion existing in the circuit court might be exercised. *Binder v. McDonald*, 106 Wis. 332, 82 N. W. 156; *Whitham v. Mappes*, 89 Wis. 668, 62 N. W. 430; *Hart v. Godkin*, 122 Wis. 646, 100 N. W. 1057. Reflection must convince one that this rule has no application to cases in which there is no sufficient ground shown for the exercise of the discretion which the court below failed to exercise, or to cases in which the court decided it had no power, but that if it had it should in its discretion deny the motion.

The situation here is quite novel, and the appellants cite and rely upon the fundamental principle that equity adjusts its reliefs and its remedies to new conditions, illustrating this by reference to the cases of *Boothe v. Summit C. M. Co.* 55 Wash. 167, 104 Pac. 207; *State ex rel. Conlan v. Oudin & B. F. C. M. & M. Co.* 48 Wash. 196, 93 Pac. 219; *Weymouth v. Oudin*, 56 Wash. 315, 105 Pac. 1027; *Gibbs v. Morgan*, 9 Idaho, 100, 72 Pac. 733; *Sternberg v. Wolff*, 56 N. J. Eq. 389, 39 Atl. 397; *S. C.* 56 N. J. Eq. 555, 42 Atl. 1078; *Featherstone v. Cooke,* L. R. 16 Eq. Cas. 298; *Merrifield v. Burrows*, 153 Ill. App. 523; *Miner v. Belle Isle Ice Co.* 93 Mich. 97, 53 N. W. 218; *Columbian A. Club v. State*, 143 Ind. 98, 40 N. E. 914. In some of these cases and under various circumstances a receiver of the corporate property

and affairs was appointed because of a deadlock between the shareholders.

The respondents meet this with a proposition that, independent of statute, a court of equity has no power to dissolve a corporation by selling and dividing the proceeds of its property among its stockholders at the suit of an individual stockholder in his own behalf and in his own name, citing *Strong v. McCagg*, 55 Wis. 624, 13 N. W. 895; *Hinckley v. Pfister,* 83 Wis. 64, 53 N. W. 21; *Brahm v. M. C. Gehl Co.* 132 Wis. 674, 112 N. W. 1097. To the point that a deadlock in the affairs of a corporation does not justify the appointment of a receiver respondents cite *Einstein v. Rosenfeld,* 38 N. J. Eq. 309; *Alabama C. & C. Co. v. Shackelford,* 137 Ala. 224, 34 South. 833; *Wallace v. Pierce-Wallace P. Co.* 101 Iowa, 313, 70 N. W. 216, 38 L. R. A. 122; *American L. & T. Co. v. Toledo, C. & S. R. Co.* 29 Fed. 416; *Loomis v. McKenzie,* 31 Iowa, 425; *Laurel Springs L. Co. v. Fougeray,* 50 N. J. Eq. 756, 26 Atl. 886, reversing *Fougeray v. Cord,* 50 N. J. Eq. 185, 24 Atl. 499; and other cases.

The development of corporation law began with a strictness of analogy between municipal and stock corporations which is no longer fully observed. The change from the ancient mode of creating corporations by special act to permit organizations by public declaration or contractual undertakings acknowledged and filed in a public office, and the great multiplication of corporations thereunder, caused some further change. There is unquestionably a broad power of equity applicable wherever wrong is shown of such a nature as to arouse the equitable jurisdiction. Whether in case of a mere deadlock between two or more contending groups of stockholders a court of equity would by final decree appoint a receiver and decree a sale of the corporate property and a distribution among the shareholders is not before us, and the disposition of this motion is not to be taken to affect that question. But where there is no imminent danger of loss

of the corporate property or of any other injury to the moving party which cannot be fully compensated by the final decree, the courts will not, upon affidavits and in advance of a trial on the merits, by placing the property in the hands of a receiver, wrest the possession of the corporate property from the corporation and from those officers who are duly elected and who *prima facie* are entitled to administer the affairs of the corporation. That is the situation shown here. The charges of misconduct made in the complaint against defendants are fully met by the answer. The truth in this regard can be ascertained only after a trial. Their present possession of the corporate offices and affairs by *John E. De Wolf* and *Reitman* was taken with the consent of and by the act of the plaintiff *Katz,* and it is *prima facie* lawful. A deadlock in corporate affairs, or rather in the matter of electing directors, may be a serious thing forced upon the plaintiff or he may have himself brought it about. It could hardly be expected that any shareholder owning half the stock could have a receiver at pleasure by merely refusing to agree to the election of any director proposed by the other stockholder or stockholders. The effort of the parties here to agree was apparently not very strenuous. The plaintiffs cast 250 votes for the two plaintiffs for directors of the corporation, giving them the majority and control of the board of directors, while the defendants *John E. De Wolf* and his brother cast 250 votes for themselves, the existing directors, giving them control of the board of directors or perpetuating the control they already possessed. An affidavit used in resisting the motion for the appointment of a receiver states that *John E. De Wolf* offered a resolution at the stockholders' meeting reciting that it was apparent that none of these persons could be elected by a majority vote and resolving that some disinterested person be agreed upon to act as the third director. Also that a list of names of nineteen competent and unbiased men was submitted to the shareholders from which the plaintiffs might

select one, but the plaintiff *Herman Katz* refused so to do. What explanation or disproval shall develop when this case is tried on its merits and the litigants and their witnesses subjected to the test of cross-examination we cannot now know, but there is here no sufficient showing to authorize the circuit court, in the exercise of a just discretion, to appoint a receiver of the property of this corporation *pendente lite*.

*By the Court.*—Order affirmed.

