[S. F. No. 16071.   In Bank.—April 29, 1939.]

GOLDEN STATE GLASS CORPORATION (a Corporation) et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Oscar C. Sattinger, *in pro. per.*, Mitchell, Silberberg, Roth & Knupp, Lester William Roth and Frank M. Gunter for Petitioners.

John H. O'Connor, County Counsel, Douglas De Coster, Assistant County Counsel, Biby & Biby and John E. Biby for Respondents.

EDMONDS, J.—In this original proceeding, the petitioners seek a writ of prohibition directed to the respondent court

for the purpose of preventing the enforcement of any orders made by it appointing a receiver. They also ask that a writ of mandate issue ordering the superior court to recognize the petitioner Sattinger as attorney for Golden State Glass Corporation, a corporation, in the action which has occasioned the present application.

By the allegations of the petition, it appears that the controversy has arisen because of difficulties between the petitioners Shenberg and Goldman, on the one hand, and G. C. De-Garmo, who is opposing them in the affairs of Golden State Glass Corporation, which was incorporated in 1933. Shenberg and Goldman own more than two-thirds of the stock of the corporation and as vice-president and secretary, respectively, have been the active operators of its business and in possession of its assets from the time of organization to May 31, 1938. Up to that date the corporation was at all times financially successful and thoroughly solvent.

According to the petitioners, on May 31, 1938, the respondent court, *ex parte* and solely upon the allegations of a complaint verified by DeGarmo, the president of the corporation, which names him and W. M. Crane as plaintiffs, appointed a receiver for the corporation. By the authority of this order the receiver took possession of the corporation's property. The corporation, acting through the petitioner Sattinger, who is an attorney at law, and Shenberg and Goldman each moved to vacate the *ex parte* order and sought to resist a confirmation of the appointment *pendente lite*. Each of these motions was denied.

The petitioners again allege in the present proceedings, as they did in affidavits presented to the superior court, that the receivership has worked and will continue to work irreparable injury to petitioners by impairing the credit of the corporation and destroying its business and good will. They also allege that petitioner Sattinger was appointed by Shenberg and Goldman to appear for the corporation ás its attorney to resist confirmation of the receivership; that Sattinger subpoenaed DeGarmo for the purpose of taking his deposition in connection with the proceedings but DeGarmo refused to appear; and that Sattinger attempted to appear as attorney for the corporation at the hearing on the order to show cause why the order appointing the receiver should not be con-

firmed, but the court refused to permit him to participate in the hearing upon the ground that he was not the duly appointed attorney for the corporation.

The petitioners contend that the averments of DeGarmo's complaint, being made up largely of conclusions and allegations upon information and belief, were insufficient to empower the trial court to make the *ex parte* order and that the court lacked jurisdiction to confirm the receivership *pendente lite* in the face of the petitioners' specific and uncontradicted showing in opposition thereto. It is also argued that the court exceeded its powers in refusing to permit petitioner Sattinger to appear as attorney for the corporation in opposition to the receivership.

By a demurrer to the petition, the respondents assert that neither prohibition nor *mandamus* will lie under the circumstances here presented because the petitioners have an adequate remedy by way of appeal from the orders complained of. Petitioners argue, relying upon *Luckenbach* v. *Laer*, 190 Cal. 395 [212 Pac. 918], that the corporation was the only party "aggrieved" by the order of appointment, and hence it was the only party entitled to appeal therefrom, and that the trial court took away its remedy by refusing to permit it to be represented by an attorney. However, it appears from the return of the trial judge that he offered to appoint a disinterested third person to act as attorney for the corporation, but Goldman and Shenberg rejected this offer, desiring that the corporation be represented only by an attorney of their own choosing. Also, *Luckenbach* v. *Laer, supra,* does not fully support the proposition contended for. There a creditor sued and recovered judgment against a defunct corporation and after a writ of execution had been returned unsatisfied, he procured the appointment of a receiver who was empowered to sue certain directors for sums alleged to have been misappropriated by them. The defendants attempted to appeal from an order denying their motion to vacate the appointment of the receiver. The court held that inasmuch as neither the appellants' personal rights nor their property interests had been affected by the action of the trial court, they were not aggrieved parties and had no standing on appeal. The petitioners in the present case are in a different position if, as they are contending, the receiver superseded

them in the active management and control of a going corporation.

This conclusion, however, is not wholly determinative of the point in question. It is established that this court will, in the exercise of its discretion, occasionally permit the validity of a trial court's order to be tested by writ of prohibition where the petitioners have a remedy by appeal if the circumstances are aggravated and justify immediate relief. Under such conditions and where, because of delay, there would be consequential damages the court has allowed the writ. (*Davis* v. *Superior Court,* 184 Cal. 691 [195 Pac. 390].) ▮ The question is largely one of discretion. (*A. G. Col Co.* v. *Superior Court,* 196 Cal. 604, 622 [238 Pac. 926]; *Slinack* v. *Superior Court,* 216 Cal. 99, 105 [13 Pac. (2d) 670].) Furthermore, where, as here, the entire record of the proceedings is before the court, it is proper to review all the facts shown and render such relief as may be proper in the premises. (*A. G. Col Co.* v. *Superior Court, supra,* at p. 613.)

The following facts appear from the allegations of the complaint upon which the receiver was appointed:

Golden State Glass Corporation, organized under the laws of California, is engaged in the business of selling glass both at wholesale and retail. Outstanding non-voting stock is owned 561 shares by the defendant Goldman, 561 shares by the defendant Shenberg, and 559 shares by the plaintiff DeGarmo. These three persons and the plaintiff Crane, who are the directors of the corporation, own two shares each of the outstanding shares of voting stock. By-laws duly adopted by the corporation provide that its business affairs shall be controlled by the board of directors; that a majority of the number of directors shall constitute a quorum; that the officers shall be elected by and hold office at the pleasure of the board of directors which shall also fix their compensation and tenure of office; that the president shall, "subject to the control of the Board of Directors, have general supervision, direction, and control of the business and officers of the corporation" and "shall have the general powers and duties of management usually vested in the office of president", and that "supervision, management and right to employ and discharge employees and fix salaries of employees shall be fixed by directors and in absence of such determina-

tion . . . may be vested in the managing and supervising agent of the corporation''.

Plaintiff DeGarmo also alleges that he is president and is ready, able, and willing to perform the duties of that office. The complaint asserts: ''Illfeeling, dissension, hatred, mutual hostility and distrust have arisen and now exist between the said plaintiffs and directors, G. C. DeGarmo and W. M. Crane, on the one side and the said defendants and directors, A. Goldman and N. E. Shenberg, on the other side. Because of said illfeeling, dissension, hatred, mutual hostility and distrust of said directors toward each other no business of the corporation has been transacted by said corporation since on or about the 1st day of January, 1938, and it is impossible because of said illfeeling, dissension, hatred, mutual hostility and distrust of the board of directors and the members of said board for them to transact any business of the corporation or to elect any person to act as manager or to give any person authority or power to transact business for said corporation, and because thereof said corporation is not now transacting any business and said corporation and its business, assets and property because thereof have been injured and said corporation has been greatly damaged.'' It is also charged that Goldman and Shenberg have violated their duties as directors and are guilty of fraudulent acts and gross abuse of authority and discretion, in that they have refused to permit DeGarmo to perform his duties as president and have refused to permit him to exercise any direction or control over the business, and have usurped possession, direction and control of the business affairs of the corporation without right.

It also appears that on December 5, 1936, Shenberg, Goldman and DeGarmo entered into a written agreement which provides that Shenberg and Goldman shall each receive $600 per month as salary, $500 of which is to be paid in cash and $100 credited upon the purchase of additional shares of stock, and that DeGarmo shall be paid $500 per month for his services. At a meeting of the board of directors on December 30, 1937, at which Crane was not present, a motion to pay Shenberg and Goldman each $2,000 as additional compensation ''at such time or times and in such amounts as the financial condition of the company makes advisable'' was unani-

mously carried, and a modified agreement executed by them and DeGarmo providing for this increase in compensation was read into the minutes of the meeting. This agreement also provides that the agreement of December, 1936, shall remain in full force and effect except as modified. The corporation paid DeGarmo $500 per month as agreed on to March 1, 1938, but on or about that date Goldman and Shenberg gave written instructions to the auditor of the corporation to discontinue his salary and he has received nothing since.

The plaintiffs on information and belief assert by their complaint that the corporation entered into an agreement on April 14, 1937, with Glassworks Local Union No. 636 which provides that the employees of the corporation who are members of the union shall each be paid at the rate of $1.10 per hour for a 40-hour week or a total of $44 per week; that Goldman and Shenberg without the knowledge or consent of the plaintiffs demanded a rebate of $14 per week from some of these employees under threat of discharge, and that certain of the employees have been refunding $14 per week to the corporation for some time past. They also charge that prior to July, 1935, the corporation acting through Goldman and Shenberg entered into an agreement with the Glass Glazing and Mirror Contractors of Los Angeles, an association of persons engaged in the same business and organized for the purpose of maintaining uniform and reasonable prices in the industry; that by this contract the defendant corporation agreed to pay a certain per cent of its monthly gross sales to the association; that under instructions from defendants Goldman and Shenberg, the corporation's auditor has kept two sets of books relating to accounts and sales for the purpose of deceiving the association and that by means of this device the defendant corporation deceived the association and paid to it less money than the contract requires; and that Goldman and Shenberg also violated the corporation's contract with the association by cutting prices, all of which was done without the knowledge and consent of DeGarmo.

Other allegations made on information and belief are that after DeGarmo conversed and consulted with the employees of the corporation, Goldman told such employees that if he saw them conversing with DeGarmo again he would discharge

them; that Goldman and Shenberg caused false sales tax returns to be filed by the corporation with the franchise tax commissioner of the State of California; that by the terms of the lease covering the use of the premises occupied by the corporation as its principal place of business, the amount of rental was to be based on the total amount of sales; that Goldman and Shenberg caused false statements to be made for the purpose of deceiving the lessor; and that the lessor was deceived by said statements and accepted smaller amounts than were due as full payment of rent due and owing.

The complaint also contains charges of financial mismanagement. The plaintiffs declare that Goldman and Shenberg, who are authorized by the board of directors to draw checks against corporate funds, have usurped the management and control of the business and have been drawing checks without right or power, thereby diverting and using the money of the corporation to its injury and also plead: "Because of the ill-feeling, dissension, hatred, mutual hostility and distrust existing between the said two factions of directors as above alleged, it is impossible for the said defendant, Golden State Glass Corporation, to carry on its business and the business and affairs of said defendant corporation are now at a deadlock so far as corporate action by its board of directors is concerned, and said deadlock will continue so long as said defendants, Goldman and Shenberg are directors of said corporation."

A second cause of action in the complaint adopts by reference the allegations of the previous one and, in addition, charges that by reason of these facts the corporation has been injured and damaged in the sum of $10,000; that because of the illfeeling, hatred, mutual hostility and distrust existing between the directors, the corporation cannot take action to authorize the filing of an action to recover that amount and it is useless to make demand on the corporation or on its directors or stockholders to file such action; and that the court should authorize the plaintiffs, as stockholders, to file such an action on behalf of the corporation. There then follows the demand that a receiver be appointed to take possession and control of all the assets including the records of the corporation; that he be empowered and directed to manage and conduct the business of the corporation; and that judg-

ment be rendered in favor of the corporation and against Shenberg and Goldman in the sum of $10,000.

■ Section 564 of the Code of Civil Procedure vests jurisdiction in the superior court to appoint receivers under certain enumerated conditions. Authority to act, if it exists under the facts presented here, may be found only in subdivision 7 of that section which confers the power "In all other cases where receivers have heretofore been appointed by the usages of courts of equity." This is a broad provision which vests a large measure of discretion in the trial court, and in the absence of a clear showing of an abuse of that discretion, its action in either appointing or refusing to appoint a receiver will be upheld. ■ However, because of the drastic character of the remedy, the discretion is not an entirely uncontrolled one but must be exercised with due regard for the facts in a particular case. Especially is this true where serious injury to the name and good will of a solvent going concern may result from the appointment of a receiver. Ordinarily, if there is any other remedy, less severe in its results, which will adequately protect the rights of the parties, a court should not take property out of the hands of its owners. (*A. G. Col Co.* v. *Superior Court, supra; Fischer* v. *Superior Court,* 110 Cal. 129 [42 Pac. 561]; *Dabney Oil Co.* v. *Providence Oil Co.,* 22 Cal. App. 233 [133 Pac. 1155]; 53 C. J., p. 25.) "By numerous authorities, the principle is unequivocally announced that, from the standpoint of the business welfare of a defendant corporation, the appointment of a receiver on an *ex parte* application is so dangerous an expedient that it should be done only in cases of the greatest emergency and where, without such appointment, irreparable injury will unquestionably result." (*A. G. Col Co.* v. *Superior Court, supra,* at p. 613.)

■ It is established, however, that a court of equity has power to appoint a receiver of a going corporation upon a showing that there are such dissensions in its governing body as to create a virtual suspension of its business. (*Boyle* v. *Superior Court,* 176 Cal. 671, 674, 675 [170 Pac. 1140, L. R. A. 1918D, 226], and cases there cited; see annotation 43 A. L. R. 242.) In the Boyle case a mining corporation had ceased the operation of its mines because of a deadlock between its four directors. Certain stockholders brought suit against two of

the directors seeking their removal upon the ground of fraud and mismanagement. The trial court appointed a receiver *pendente lite* without determining the merits of the case as between plaintiffs and defendants and upon the sole ground that because of the deadlock the business of the corporation was not being operated. On appeal it was held that although under the circumstances shown it was proper to appoint a receiver in accordance with "the usages of courts of equity", the function of such an officer is not to close up the corporation's affairs or to effect its dissolution but to preserve its business, and, if possible, to continue its functions. ▉ The rule which should govern such an appointment has been succinctly stated by Mr. Pomeroy as follows: "The power of a court of equity to appoint a receiver of a corporation either because it has no properly constituted governing body, or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, appears to be settled; but it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution, and only for such time and to such an extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders. As soon as a lawfully constituted and competent governing body comes into existence, whether it is brought into existence by an adjustment of the dissensions or by the election of a new body, and such body is ready to take possession of the property of the corporation, and proceed in the proper discharge of its duties, the court must lift its hand and retire." (4 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1545.)

Under these principles even if there is dissension in corporate management a receiver should not be appointed where no actual or threatened cessation or diminution of business operations is shown. Thus in *Katz* v. *DeWolf*, 151 Wis. 337 [138 N. W. 1013, Ann. Cas. 1914B, 237], the two surviving directors, each of whom owned one-half of the stock, could not agree on the management of the company but it was held that "where there is no imminent danger of loss of the corporate property or of any other injury to the moving party which cannot be fully compensated by the final decree, the

courts will not, upon affidavits and in advance of a trial on the merits, by placing the property in the hands of a receiver, wrest the possession of the corporate property from the corporation, and from those officers who are duly elected and who *prima facie* are entitled to administer the affairs of the corporation.'' In *Wallace* v. *Pierce-Wallace Pub. Co.,* 101 Iowa, 313 [70 N. W. 216, 63 Am. St. Rep. 389, 38 L. R. A. 122], dissension had arisen between the plaintiff and the defendants who owned equally all the stock of the corporation. The court decided that the plaintiff, who had been excluded from management, was not entitled to have a receiver appointed upon proof of these facts since it appeared that the disagreement between the parties had not resulted in a stoppage of the business and the corporation was perfectly solvent and well-managed. A case involving similar facts is *Enterprise Printing & Pub. Co.* v. *Craig,* 195 Ind. 302 [144 N. E. 542, 145 N. E. 309]. It was there declared that the mere fact that a minority stockholder is excluded from the management of a corporation is not a ground for the appointment of a receiver when the business is being successfully managed under the majority control.

█ In the case at bar the allegations of the complaint show that the directors were deadlocked and that ''because of said illfeeling, dissension, hatred, mutual hostility and distrust of said directors toward each other no business of the corporation has been transacted by said corporation since on or about the 1st day of January, 1938 . . . ''. These facts are undoubtedly sufficient to justify the appointment of a receiver *ex parte* under the authority of *Boyle* v. *Superior Court, supra.* █ But the force of this showing is weakened by other averments of the complaint to the effect that since January 1, 1938, Goldman and Shenberg ''have usurped and exercised and are now usurping and exercising the direction and control of the business and affairs'' of the corporation. At the hearing on the order to show cause it was shown by numerous affidavits in support of defendants' motion to vacate the *ex parte* order that Goldman and Shenberg had been conducting the business of the corporation, which was clearly solvent, from 1933 to the time of the receivership. Attached to these affidavits were certified copies of monthly audits made by a firm of certified public accountants showing that

during the first four months of 1938 the corporation had an average gross monthly income from sales in excess of $12,000 and in May, 1938, when the complaint was filed, had assets of more than $60,000 in excess of liabilities. This specific showing stood uncontradicted at the time of the hearing. Under these circumstances no sufficient grounds existed for continuing the receivership *pendente lite* and the trial court exceeded its jurisdiction in confirming its *ex parte* order of appointment.

It is true that the complaint contains averments alleging fraud and mismanagement on the part of Shenberg and Goldman, but these are stated either as conclusions or upon information and belief. Stronger proof is essential to justify a receivership where specific and detailed evidence that the corporation's business is being successfully conducted at a profit is presented in opposition thereto. A complaint based largely upon generalities and conclusions of the plaintiffs and upon information and belief is insufficient upon which to appoint a receiver. (*Mason* v. *San-Val etc. Co.*, 1 Cal. (2d) 670 [36 Pac. (2d) 616].)

Petitioners' contention that the trial court should have recognized Sattinger as attorney for the corporation must also be sustained. The commencement of the litigation by DeGarmo made necessary the appointment of an attorney for the corporation. At that time it had four directors, but only DeGarmo, Shenberg and Goldman actively participated in the direction of the corporate affairs. By the uncontradicted affidavits of Goldman and Shenberg it appears that Crane acquired his two shares of stock in 1936 for the purpose of representing DeGarmo's interest during his absence on a long vacation trip. The agreements between DeGarmo, Shenberg and Goldman which are set forth in the complaint recite that these three men are the sole owners of the stock of the corporation. Unquestionably, Crane has no interest in the defendant corporation and the record includes an affidavit quoting Crane as saying that the action was filed without his knowledge or consent.

Under such circumstances the superior court should have recognized the attorney employed by the two directors owning two-thirds of the corporate stock and in actual control of the corporation's business affairs. In *Streeten* v. *Robin-*

*son,* 102 Cal. 542 [36 Pac. 946], where the vice-president, then actually managing the business of the corporation, employed an attorney without approval of the board of directors, this court held such action proper, the court saying: "The authority of the president, or other head of a corporation, to employ an attorney when the exigencies of his company require it has been frequently recognized. (Citing cases.)"

The writ of prohibition and the writ of mandate will each issue as prayed.

It is so ordered.

Waste, C. J., Seawell, J., and Houser, J., concurred.

SHENK, J., Dissenting.—I dissent.

In the first place, the opinion has invaded the domain of the trial court.

Contrary to the rule, the evidence favorable to the defendants in the trial court has been given controlling effect as against the decision of the court based on substantial evidence favorable to the plaintiffs in the pending action.

The *ex parte* character of the order appointing the receiver became of no significance, in view of the later hearing on the motion to vacate the order, at which all parties interested in the corporation, either as shareholders or directors, were present and represented. The evidence on the motion to vacate consisted of the verified complaint, an affidavit of the president of the corporation in support thereof, and affidavits in opposition to the appointment and continuance of the receivership. It was disclosed by the allegations of the complaint that the two plaintiffs and the two individual defendants were and had been, since September 17, 1935, the four directors of the corporation; that, under the by-laws of the corporation, all corporate powers were to be exercised by or under the authority of the board of directors, and the "business and affairs" of the corporation were to be controlled by said board; that, when the board consisted of four, three should constitute a quorum and the favorable action of three should be necessary to the transaction of business; that the president should be "the chief executive officer of the corporation and shall, subject to the control of the Board of

Directors, have general supervision, direction and control of the business and affairs of the corporation . . . and shall have the general powers and duties of management usually vested in the office of president of a corporation''; that G. C. DeGarmo is and has been since September 17, 1935, president of the corporation, ready, able and willing to perform the duties of his office; that because of illfeeling and dissension existing between the two plaintiff directors and the two defendant directors ''no business has been transacted by said corporation since on or about the first day of January, 1938''; and because thereof it is impossible for the board ''to transact any business of the corporation or to elect any person to act as manager or to give any person authority or power to transact any business for said corporation, and because thereof the corporation is not transacting any business and said corporation and its business, assets and property have been injured and said corporation has been greatly damaged''; that the directors Goldman and Shenberg have taken possession and control of all the business, assets and property of the corporation and have usurped and ''are now usurping and exercising the direction and control of the business and affairs of said defendant, Golden State Glass Corporation, without any right whatever to do so''; that Goldman and Shenberg, since March 1, 1938, have refused to permit the plaintiff president to perform any of the duties of his office or any services on behalf of the corporation, and that on March 1, 1938, the defendant Goldman, without any authority whatsoever, instructed the auditor of the corporation to discontinue the salary of the plaintiff DeGarmo, as president of the corporation.

The foregoing facts appear by direct averment of the plaintiffs' complaint. On information and belief, the plaintiffs have alleged acts of fraud and mismanagement on the part of defendants Goldman and Shenberg, as set forth in the prevailing opinion.

On the allegations of the complaint, the further affidavit of plaintiff DeGarmo in support thereof, and the affidavits of the defendants in opposition, the trial court concluded, as stated in his answer and return to the alternative writ herein, as follows:

"After having considered said verified complaint and said affidavits and after having heard argument by said attorneys and having considered said argument, said respondent believed that the allegations made in said verified complaint are true and, so believing, said respondent did then and there make an order confirming the appointment of a receiver *pendente lite.*"

The respondent judge further stated, "That upon conflicting evidence before said court at the time of said hearings last above mentioned, he determined that said defendants Shenberg and Goldman were not, prior to May 31, 1938, the day said *ex parte* order appointing said receiver was made, in possession of the assets of said defendant corporation as officers or otherwise of said corporation, but were personally in possession of the assets of said corporation without any rights whatsoever and were purporting to conduct the business of such corporation without any right so to do, and further on said conflicting evidence he determined that because of dissension existing between the members of the Board of Directors above mentioned said corporation was not transacting and could not transact any corporate business".

The respondent court had power to resolve the conflict presented by the complaint and the conflicting affidavits. (*Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001] ; *Brush* v. *Apartment & Hotel Finance Corp.,* 82 Cal. App. 723 [256 Pac. 285].) The case of *Boyle* v. *Superior Court,* 176 Cal. 671 [170 Pac. 1140, L. R. A. 1918D, 226], is direct authority for the appointment of a receiver in case of a deadlock of the board of directors on account of which the corporate business cannot be exercised. Such a deadlock was present on the showing made by plaintiffs in the pending action. That fact, together with other facts appearing in support of the plaintiffs' showing, was sufficient to support the order appointing the receiver. As the court had jurisdiction of the parties and the subject matter, the authority of the trial court to act was full and complete and on this collateral attack on the decision of the trial court the peremptory writ of prohibition should be denied.

Secondly, the defendants Goldman and Shenberg had an appeal from the order appointing the receiver. (Subd. 2, sec. 963, Code Civ. Proc.) Under section 943, Code of Civil

Procedure, they as appellants could have filed an undertaking staying all proceedings under said order pending determination of the appeal on its merits. This procedure constitutes a plain, speedy and adequate remedy in the ordinary course of law, within the meaning of section 1103, Code of Civil Procedure. (*Jacobs* v. *Superior Court,* 133 Cal. 364 [65 Pac. 826, 85 Am. St. Rep. 204]; *Sunset Farms, Inc.,* v. *Superior Court,* 9 Cal. App. (2d) 389, 393 [50 Pac. (2d) 106]; *Pacific Broadcasting Co.* v. *Superior Court,* 100 Cal. App. 649 [280 Pac. 991]; *Santa Ynez Mercury Corp., Ltd.,* v. *Superior Court,* 26 Cal. App. (2d) 279 [79 Pac. (2d) 185].)

The ruling in the Jacobs case has never been questioned. It was there said at pages 365 and 366:

"Formerly—and when *Havemeyer* v. *Superior Court,* 84 Cal. 327 [24 Pac. 121, 18 Am. St. Rep. 192, 10 L. R. A. 627], was decided—there was no appeal from an order appointing a receiver, but in 1897 (Stats. 1897, p. 55) section 939 of the Code of Civil Procedure was amended so as to allow such appeal, and at the same time section 943 was amended so as to provide for the staying of an order appointing a receiver by an undertaking on appeal. These amendments were apparently intended to afford a remedy for prodigal, unwise, and unwarranted appointments of receivers, which seems to be a growing evil; and we think that they do afford an adequate remedy, as contemplated by said section 1103, and the decisions of this court on the subject. The fact that a question of jurisdiction arises does not change the rule as to the adequacy of the remedy by appeal. (See *Agassiz* v. *Superior Court,* 90 Cal. 101 [27 Pac. 49].)"

This rule has been consistently followed in the later cases above cited and was relied on by the District Court of Appeal in denying the writ of prohibition in this matter. (Cal. App.) [82 Pac. (2d) 492]. The case of *A. G. Col Co.* v. *Superior Court,* 196 Cal. 604 [238 Pac. 926], so greatly relied on by the petitioner, did not overrule the Jacobs case, but annulled the order as if the proceeding were one in *certiorari.*

I see no abuse of discretion on the part of the trial court in denying to the defendant directors, who are thus *prima facie* usurping the functions of the corporation and wrong-

fully in possession of its assets, the right to appoint an attorney to represent the corporation. All the shareholders and all the directors of the corporation were parties to the action. All interested parties were, therefore, represented in the action. The points in controversy affecting the corporation and its assets can be adjudicated in this action between the parties thus appearing. Especially was this true since the trial court ordered that no default be entered against the corporation and that the court would, on the suggestion of the defendant directors, appoint an attorney to represent the corporation, but the offer was denied. Under these circumstances, the action of the trial court in refusing to permit the attorney for the defendant directors to represent the corporation was not arbitrary, did not amount to an abuse of discretion, and should not be controlled by *mandamus*. The peremptory writ of *mandamus* should also be denied.

Curtis, J., concurred.

Rehearing denied. Shenk, J., and Curtis, J., voted for a rehearing. Langdon, J., did not participate.