## SHURIN v. UNITED STATES.
### No. 5608.

Circuit Court of Appeals, Fourth Circuit.
Nov. 10, 1947.

Writ of Certiorari Denied Feb. 16, 1948.
See 68 S.Ct. 608.

Walter R. Jones, Jr., of Rockingham, N. C. (Walter R. Jones, of Rockingham, N. C., on the brief), for appellant.

Robert S. McNeill, Asst. U. S. Atty., of Greensboro, N. C. (Bryce R. Holt, U. S. Atty., of Greensboro, N. C., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in a criminal case in which the defendant, one Morris Shurin, was convicted of violating sec. 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 311, making it a criminal offense for anyone charged with the duty of carrying out any of the provisions of the act to make any false statement or certificate as to his liability or nonliability for service under the act or to evade registration or service thereunder. Defendant was charged in a three count indictment with violations of the act but was acquitted on the second and third counts. The first count, under which he was convicted, charged that on January 10, 1944, having been registered under the act with Local Board No. 2, Greensboro, North Carolina, he "evaded service in the land or naval forces of the United States in that in occupational classification affidavit filed with said board he made a false statement as to his liability for service stating therein he was President-Manager of an establishment manufacturing aeroplane parts, buying tools, running shop and inspecting aircraft, and he then knew the statement to be false as his company had no manufacturing facilities, and he did not supervise work done by subcontractors."

The principal question in the case is as to the sufficiency of the evidence to take the case to the jury, but we think it clearly sufficient. Defendant had registered under the selective service act in Greensboro, N. C., where he was then residing, and had been classified as 1-A and ordered to report for induction on January 19, 1944. He secured a change in classification to 2-A, which meant that he was engaged in an essential occupation and not subject to induction, by sending the Draft Board a telegram and mailing it an affidavit, both of which contained false statements as to his occupation. The telegram, which was sent from New York, was as follows: "Received induction orders today for January 19th 1944. Am in complete surprise at not being reclassified from 3A which I received on April 14 1943 to 1A so that may have the civil right to appeal local board here cannot figure it out unless some mistake has been made. I would certainly be in receipt of any mail had you sent me a reclassification and would have appealed directly to you without further difficulty as *I am now president of a defense plant making aeroplane parts with orders from the Army and Navy.* Form 42A will follow. Please wire collect your decision." (Italics supplied.)

The form 42-A, which was verified by defendant and mailed from New York, contained statements as follows: "Name of Registrant: Morris Shurin. Selective Service Order No. 1673, Age 31. Local Board No. 2, Guilford County, Greensboro, N. C. Title of present job: Pres. and Manager of Entire Business. Describe duties actually performed: Placing all subcontracts, *buying all tools. Running shop. Inspecting all aircraft work for our Army and Navy planes. Consult on all our work for Ranger aircooled engines.* Our contracts total about $600,000 dollars. In the last 60 days, we have shipped $135,000. * * * Name of company: Hudson Aircraft Products Co., 318 East 39th Street, New York City. Description of the activities of this company: *Manufacture of 21 different parts for Army and Navy Planes such as bolts, samper rungs and crankshafts* for Ranger Eng., Trainer and Fighter planes. State specifically what proportion of your products currently produced are: (a) for use in the war effort 100%. (b) for civilian use, None. Is expansion or further conversion contemplated in war production? Yes. *Number of employees now* 84. * * * This form was completed at the plant or office of the company located at Hudson Aircraft Prod. Co., 318 E. 39th Street, NYC and all correspondence relative to this affidavit should be so addressed." (Italics supplied.)

The statements as to the occupation of defendant contained in the telegram and affidavit were false. The Hudson Aircraft Products Company was not a manufacturing corporation at all but a mere trade name used by defendant, who had secured contracts from the Ranger Aircraft Company for the manufacture of parts for aircraft and had made contracts with manufacturers to produce these parts. He him-

self manufactured nothing, ran no shop and had no employees. He had no plant or office, but was allowed to use a desk in the office of a manufacturer who made the parts for which he had contracted, and to place a sign bearing the name of the Hudson Aircraft Products Company on a door of that office. His contention was that his relationship to the manufacturer was sufficient to show that he had no intent to mislead or deceive the Board; but this question was fully and fairly submitted to the jury and quite properly decided against defendant, who was manifestly nothing more than a contractor or middleman and who must have known that he was not entitled to classification as president of a corporation engaged in essential war work.

 Questions raised as to the admissibility of evidence require no discussion. The fact that all of the statements contained in the affidavit were not mentioned in the indictment did not, of course, preclude their admission in evidence; and the questions asked of defendant as to his failure to produce witnesses in corroboration of his testimony and as to his gambling were proper as bearing upon his credibility. The scope of cross examination as to such matters rests largely in the discretion of the trial judge, and can furnish the basis for a new trial only where manifest abuse of discretion and resulting prejudice are shown. Nothing of the sort is shown here, and the jury were cautioned that the defendant's admissions as to participation in a gambling game were not to be considered on the question of his guilt or innocence.

The remaining point presented by the appeal relates to the refusal to transfer the case to the Southern District of New York for trial. As to this, it appears that defendant was indicted in the Eastern District of North Carolina in April 1946. He was arraigned at the December term of court 1946 and at the request of the attorney representing him the case was continued and set for hearing at Rockingham at March term 1947. At that term defendant appeared with new counsel, but without witnesses, and at the request of counsel the case was continued and set for hearing at the April term at Greensboro in order that witnesses might be secured and depositions taken. Not until the 8th of April 1947 did defendant make the motion to transfer the case to New York for trial. This motion was denied at that time on the ground that the offense was committed only in the Middle District of North Carolina and was not transferable under Rule 21(b) of the Federal Rules of Criminal Procedure, 18 U.S. C.A. following section 687. The motion was renewed when the case came on for trial on April 14th; and was overruled by the court without reasons being given.

 It was the view of the District Judge when the motion was first made that the offense charged was not one committed in two or more districts, but only in the district where the telegram and affidavit were received and acted upon by the Draft Board. The crime charged in the first count of the indictment was that defendant "evaded service * * * in that in the occupational classification affidavit filed with said board he made a false statement", etc. Whether the gist of the crime be regarded as the evasion of service or the filing of the affidavit, no crime was committed by defendant until the affidavit was received by the draft board; and this, of course, was in the Middle District of North Carolina. The fact that the telegram was sent from New York and the affidavit mailed from there is immaterial, since both the telegraph company and the mails were innocent agencies used by defendant for laying his false representations before the Draft Board in Greensboro, where filing of the affidavit took place and the evasion of service occurred. It would seem that it was in that district alone that the crime was committed, although it may be argued that the crime was begun by the mailing of the papers in New York and concluded when they reached their destination in North Carolina. United States v. Anderson, 328 U.S. 699, 705, 66 S.Ct. 1213, 90 L.Ed. 1529; United States v. Johnson, 323 U.S. 273, 65 S.Ct. 249, 89 L.Ed. 236; Humes v. Pescor, 8 Cir., 148 F.2d 127; United States v. Van Den Berg, 7 Cir., 139 F.2d 654; Reass v. United States, 4 Cir., 99 F. 2d 752, 754. In the case last cited Judge Soper, speaking for this court, after point-

ing out the classes of cases which can be said to extend to more than one district, proceeded to say: "On the other hand, a crime may lack continuity of performance and may consist of a single act which occurs at one time and at one place in which only it may be tried, although preparations for its commission may take place elsewhere. Such are offenses which involve the filing of formal documents, such as certificates or reports at a designated office. See United States v. Lombardo, supra [241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897]; Wampler v. Snyder, 62 App.D.C. 215, 66 F.2d 195; Bowles v. United States, 4 Cir., 73 F.2d 772. In the Wampler case the defendant placed an income tax return in the mail in the City of Washington for delivery to the Collector of Internal Revenue in Baltimore in accordance with the statute, 26 U.S.C.A. § 2053, now 26 U.S.C.A. [Int.Rev.Code] § 53, which required that the return 'shall be made' to the collector. It was held that a mere placing of the returns in the mail was not a compliance with the statute and that the words 'shall be made' are equivalent to the words 'shall be filed'. See, also, Rumely v. McCarthy, 250 U.S. 283, 39 S.Ct. 483, 63 L.Ed. 983; Henry v. Francestown Soap-Stone Co., C. C., 2 F. 78."

It is not necessary to decide the point here, however, for the Middle District of North Carolina was admittedly one of the districts in which the crime was committed and under Rule 21(b) the question of transfer was one resting in the sound discretion of the District Judge. It is argued that the refusal to transfer was not based on the exercise of discretion but upon the view that the court of the Middle District of North Carolina was the only court having jurisdiction. This can be said of the action of the judge on April 8th but not with respect to his action on the 14th when the motion was renewed and denied for the time being but taken under consideration. As nothing appears to the contrary, the presumption is that the last motion was denied in the discretion of the trial judge. Pilot Life Ins. Co. v. Habis, 4 Cir., 90 F.2d 842, 843. Quite apart from this, however, we do not think that the denial of the motion could be held ground for a new trial, even if the denial were based upon an erroneous view of the law, in the absence of a showing that it should have been granted and that defendant had been prejudiced by its denial. Neither showing is made here. As to prejudice, there is nothing in the record to suggest that the defendant was not able to develop his defense as fully as if the case had been tried in New York or that he suffered in any other way from trying it in Greensboro instead of there. As to the basis for the motion, it appears that defendant delayed making it for more than a year after the indictment had been found against him and until after the case had twice been set for trial in the Middle District of North Carolina by consent of his counsel, and that no reason for removal was given based upon anything that had occurred in the meantime. A transfer under such circumstances would not have been an exercise but an abuse of discretion; and even if we were of opinion that the judge was in error in the view of the law upon which he denied transfer, we would not be justified in setting aside the conviction and remanding the case for the exercise of a discretion where no reasonable basis existed for its exercise. See Katz v. DeWolf, 151 Wis. 337, 138 N.W. 1013, Ann.Cas.1914B, 237; 3 Am.Jur. 526.

The purpose of the discretion vested in the judge by Rule 21(b) was to expedite trials and give proper consideration to the convenience of parties and witnesses. After a conviction has been had, reversal ought not be granted because the judge thought the provisions of the rule not applicable to the case, unless it appears that the case should have been transferred and defendant suffered prejudice by reason of failure to transfer it. On no other basis could the error be held prejudicial.

Affirmed.