Filed 12/17/14  County of Santa Cruz v. Kaylor CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| COUNTY OF SANTA CRUZ,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ROY KAYLOR,<br><br>        Defendant and Appellant. | H040243<br>(Santa Cruz County<br>Super. Ct. No. CV168369) |

Following trial, appellant Roy Kaylor's property was declared a public nuisance and the trial court appointed a receiver to bring the property into compliance with the Santa Cruz County Code (County Code).  Appellant contends that the trial court abused its discretion when it ordered him to remove his personal possessions from the property. We affirm the order.

## I.  Statement of the Case

Appellant owns approximately 150 acres near Big Basin State Park in Boulder Creek, California.  In November 2006, the County of Santa Cruz (County) issued to him a notice of violation, which cited the following violations of the County Code:  (1) section 13.10.140, subdivision (a) [noncompliance with zoning regulations]; (2) section 13.10.275, subdivision (g) [violations of allowed uses in a timber harvest zone district];

(3) section 13.10.279, subdivision (a) [continuance of a code violation]; (4) section 13.10.556 [illegal outdoor storage of personal property and materials]; and (5) section 13.10.683 [parking and use of travel trailers and recreational vehicles without permits].

Appellant failed to bring his property into compliance with the County Code. In August 2010, the County filed a complaint for abatement of a nuisance, injunctive relief, civil penalties, attorney's fees, and costs. The following month, appellant filed an amended answer in which he denied the allegations and asserted that he had already hauled 72 pickup truck loads of trash to the local dump and evicted or removed approximately 250 people, mostly methamphetamine addicts, from the property over a 26-year period.

In November 2010, appellant filed a demand for a jury trial. The following month, the County moved to strike the demand.

In March 2011, appellant was now represented by counsel, James Ritchey, and requested court mediation. The trial court set the case for court mediation and granted the County's motion to strike the demand for a jury trial.

On May 24, 2011, the County filed the declaration of Kevin Fitzpatrick, a senior code compliance officer for the County. Two days earlier, Fitzpatrick had compiled an inventory of items on appellant's property. The inventory included: 88 vehicles, approximately 40 tires, miscellaneous auto parts, assorted junk and trash, storage containers, junk piles, a water tank, toilets, surfboards, batteries, refrigerators, and a catamaran.

After the case was successfully mediated, the trial court directed the County to prepare the order. However, the parties were unable to agree on the written terms. On July 29, 2011, Ritchey substituted out of the case and appellant represented himself.

On August 30, 2011, appellant requested the appointment of a public defender. The trial court denied the request. The matter was set for a court trial on November 10, 2011.

On the day set for trial, appellant sought to disqualify Judge Timothy Volkmann pursuant to Code of Civil Procedure section 170.1.  On January 25, 2012, the motion was denied by an out-of-county judge.

On February 29, 2012, the case came before Judge Volkmann.  Appellant, who was now represented by Karla Gottschalk, successfully moved to disqualify Judge Volkmann pursuant to Code of Civil Procedure section 170.6.  The case was set for trial on April 10, 2012.

On March 14, 2012, the County filed a motion for appointment of a receiver in the event that it prevailed at trial.  The County attached a supporting declaration by Athena Kaylor Honore, appellant's daughter.  According to Honore, she had been involved in attempts to clean up the property since September 2010 and agreed that it should be returned to its pristine state.  Honore had contacted the television show "Hoarders," which provided a crew of eight to 10 people to remove cars and junk over a weekend.  However, the percentage of items removed was small due to heavy rains.  Honore was willing to accept the nomination of receiver.  Appellant opposed the motion for the appointment of a receiver.

Trial was held on April 10, 2012.  The County presented evidence, among other things, of the most recent inventory on April 4, 2012, which identified approximately 83 vehicles, miscellaneous machinery, junk, debris, garbage, and other personal property on the site.  Following trial, the court found in favor of the County.

On April 27, 2012, the trial court appointed Honore as the receiver.  Three days later, the judgment was filed.  The trial court declared the property a public nuisance and imposed an injunction.  The trial court ordered that the property be brought into compliance with the County Code by April 30, 2013.  It also awarded code enforcement costs, attorney's fees, and costs to the County.  The trial court suspended the imposition of $12,500 in civil penalties, but reserved jurisdiction to lift the suspension if appellant violated the injunction or interfered with the trial court's order to bring the property into

3

compliance with the County Code. The trial court retained jurisdiction to enforce the terms of the judgment and to oversee compliance, and continued the matter to September 7, 2012, for case management.

On September 7, 2012, Honore informed the court that she had been prevented from making significant progress on the property and requested additional time to bring the property into compliance with the County Code. She also requested the appointment of a successor receiver. Gottschalk indicated her intent to be relieved as counsel. The matter was continued to September 21, 2012, for consideration of the appointment of a successor receiver.

After the parties submitted nominations, the trial court appointed the County's nominee, John Richardson. He subsequently declined the appointment due to a conflict of interest. The parties submitted additional nominees. Meanwhile, appellant was now represented by Andrew Pierce. Appellant proposed that if a receiver was appointed, he or she be required to contract with Shandra Brown to continue her work in removing items and vehicles from the property. On December 6, 2012, the trial court issued an order relieving Honore of her duties as receiver and appointing appellant's nominee, William Rahal, as receiver. The order charged Rahal "with the abatement of a public nuisance on the subject property . . . and with bringing [it] into compliance with the County Code." As suggested by the parties, the trial court set a benchmark of February 1, 2013, for cleanup of the portion of the property, which was known as the Teddy Roosevelt area or "Area One." Rahal was also directed, as a matter of first choice, to contract with Brown to continue the work she was performing to remove vehicles and other items from the property.

On February 8, 2013, the County reported that Area One had not been completely cleaned up. The trial court ordered that the remaining cleanup of Area One be completed by March 1, 2013. As of March 12, 2013, Area One had been "adequately cleaned up with the exception of a trailer, an axle and three garbage/buckets of trash . . . ."

4

On March 15, 2013, the trial court ordered "Area Two" to be cleaned up within six months, as requested by appellant. The matter was set for a further case management conference on September 13, 2013.

In mid-August, staff inspected the property and reported that Area Two was 65 to 75 percent cleaned up. The cleanup of Area Two was not completed by September 13, 2013. The trial court ordered that the cleanup of Area Two be completed by September 27, 2013. The trial court also ordered appellant to remove all of the items that he wished to retain by September 27, 2013, and authorized the County to finish the cleanup of Area Two, if necessary.

On September 26, 3013, appellant filed a status management conference statement, which stated in part: "[T]he Court indicated that [appellant] should remove everything he needed to keep within two weeks. As we expected, that has not proved feasible. [Appellant] has, or will have by the time of the hearing, transferred the items he is interested in keeping into three mobile storage units that were already on the property, and two bus[es]. All this material can now be removed and its visual impact has been minimized as much as is possible. What [appellant] has not been able to do is to find a permanent home for the storage units or the vehicles, and he will also need to perform repairs on one of the bus[es] to get it mobile. After discussions, he does not believe the Receiver objects to the temporary presence of the storage units or the bus[es], or that they will interfere with his activities." Appellant also claimed that a "handful" of vehicles were moved from Areas One and Two to "Area Three" "to allow a more organized sale of the most valuable properties, and not as part of some shell game."

On September 27, 2013, the trial court held a case management conference hearing. The County objected to appellant's request that he be allowed to store items in buses and shipping containers. The County argued that Rahal should be exclusively in charge of the cleanup since Rahal was under the impression that he was required to use Brown's services. The County also pointed out that Rahal had indicated that the cleanup

5

could be completed by mid-December.  The trial court was informed that the cleanup of Area Two had not been completed, because there were still vehicles, trash, and scrap. Rahal stated that he had not been to the property in the previous two weeks, because his understanding was that appellant was going to remove his personal items during that period.  The trial court indicated that its intention was to turn the cleanup over to Rahal and give appellant seven days to remove anything he wanted off the property. Appellant's counsel stated that the items that appellant wanted to keep had been consolidated in the storage containers and buses.  Appellant's counsel pointed out, however, that "[t]he only difficulty has been; A, getting the money to get them off the property, and B, having a place to put them."  Rahal disputed that only vehicles had been moved to Area Three.  He claimed that "boxes of things," shelving, and a large amount of debris had been moved to Area Three.  Rahal also clarified for the trial court that the shipping containers and buses were not "mobile."  He pointed out that the removal of the storage containers required heavy equipment and the buses needed repairs.  Rahal stated that appellant's counsel had asked him whether the containers would interfere with the cleanup and he had replied that it was possible and asked for a list of the items that appellant was interested in keeping.  Rahal never received the list.

The trial court ordered appellant to provide a list of items to Rahal that he wanted to retain by noon on September 30, 2013, to place the items in the two buses and three shipping containers, and remove them by 5:00 p.m. on October 4, 2013.  The trial court also ordered that Rahal would then have exclusive authority to dispose of any remaining items by mid-December 2013.  Appellant claimed that the order would result in "hundreds of thousands of dollars of things [being] lost in [the] process . . . ."  After appellant's counsel questioned the feasibility of the order, the trial court stated:  "I've given a year to get this property cleaned up.  Two weeks ago, I said we're going to have a particular portion cleaned up by today, and people ignore me.  So this is what happens

6

when you ignore the judge. I don't like it, but it is what it is. People won't cooperate so we're going to do this in a more Draconian way."

Appellant filed a timely notice of appeal.

## II. Discussion

Appellant contends that "for the Court to punish him by potentially taking all his property away on short notice because the Receiver and others were not able to clean up Area Two, while giving the Referee three months to clean up Area Three was an abuse of discretion."

Court rulings on receivership matters are reviewed for abuse of discretion. (See, e.g., *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 931 [authorization for receiver to contract for demolition] (*Gonzalez*); *Lesser & Son v. Seymour* (1950) 35 Cal.2d 494, 503 [confirmation of receiver's sale of partnership assets and real property]; *Golden State Glass Corp. v. Superior Court of Los Angeles County* (1939) 13 Cal.2d 384, 393 [appointing or refusing to appoint a receiver].) " 'The proper exercise of discretion requires the court to consider all material facts and evidence and to apply legal principles essential to an informed, intelligent, and just decision. [Citation.] Our view of the facts must be in the light most favorable to the order and we must refrain from exercising our judgment retrospectively.' [Citations.] Where there is no evidence of fraud, unfairness, or oppression, the court has wide discretion in approving the receiver's proposed actions. [Citations.]" (*Gonzalez*, at p. 931.)

Here, appellant was notified of the numerous code violations six years prior to trial. His efforts to clean up his property were inadequate. After the trial in April 2012, the court ordered that the property be brought into compliance with the County Code by April 2013 and appointed a receiver. During that year, appellant had the opportunity to remove whatever items he wished to retain. On March 15, 2013, the trial court ordered Area Two to be cleaned up within six months, as requested by appellant. Appellant could

7

have removed his personal items during that period. However, he did not do so by September 13, 2013. At that time, the trial court extended the period for the cleanup of Area Two and for the removal of appellant's personal items to September 27, 2013. However, on that date, the trial court was informed that there was still trash, vehicles, and scrap in Area Two, "boxes of things," shelving, and a large amount of debris had been moved to Area Three, and the items that appellant wanted to keep had not been removed but had instead been placed into storage containers and buses. Rahal had also requested a list of items that appellant was interested in keeping, but none was provided. Under these circumstances, the trial court did not abuse its discretion when it ordered appellant to remove his personal possessions from the property by October 3, 2013.

Appellant argues that neither the County nor the receiver requested that the court order him to remove his personal possessions on such short notice. Regardless of whether the County or the receiver had requested the specific date of compliance, appellant had more than adequate notice. He had been on notice for almost seven years that his use of his property violated numerous sections of the County Code. On September 13, 2013, the trial court specifically ordered him to remove all items he wanted to keep by September 27, 2013. He did not comply with the court order. There is no merit to this argument.

Appellant next contends that he was not responsible for the progress of the cleanup. Appellant, however, was responsible for removing his personal possessions, which he did not do.

Appellant also argues that the trial "court, concerned about issues with Area Two ordered [him], without warning, to dispose of all of his remaining personal property." He claims that his personal possessions "could easily have been stored in the remaining storage units and vehicles until the December deadline rather than being summarily trashed." As previously stated, appellant had sufficient notice. Though there may have

8

been other options for the trial court, it did not abuse its discretion in ordering appellant to remove his personal possessions.

### III.    Disposition

The order is affirmed.

_____

Mihara, J.

WE CONCUR:


_____

Bamattre-Manoukian, Acting P. J.



_____

Grover, J.

10