[Civ. No. 17721. First Dist., Div. One. Feb. 26, 1958.]

In re JAMISON STEEL CORPORATION (a Corporation). ROBERT H. JAMISON et al., Respondents, v. HARRY F. BROWN et al., Appellants.

Cushing, Cullinan, Duniway & Gorrill, Ben C. Duniway, O'Melveny & Myers and Everett B. Clary for Appellants.

Ruffcorn, Kimball & Smith and W. Todd Smith for Respondents.

McMURRAY, J. pro tem.*—Robert H. Jamison and Elaine T. Barthorpe filed a verified petition in the Superior Court of the City and County of San Francisco under the provisions of section 819 of the Corporations Code, alleging that the directors of appellant Jamison Steel Corporation were evenly divided and could not agree as to the management of its affairs, so that the business could no longer be conducted to advantage and its property and business was in danger of being impaired and lost. The trial court granted the petition and appointed a provisional director. Harry F. Brown and George W. Dellett and Jamison Steel Corporation appeal from this judgment, and have filed a petition for a writ of supersedeas.

Edgar E. Jamison founded Jamison Steel Company in 1912. Robert H. Jamison, one of the respondents here, is his son. At first Jamison Steel was a partnership, but in 1935 it was incorporated. The original stockholders were appellant Harry F. Brown, Edgar E. Jamison, and J. S. Barthorpe, the husband of the respondent, Elaine T. Barthorpe, who inherited her husband's stock upon his death in 1943. In 1956 Edgar E. Jamison transferred legal title to his stock to his son, Robert, in trust for Edgar. The appellant George W. Dellett does not presently own any stock in the business, but has been employed by the corporation since it was founded, and is now manager of the San Francisco office. Appellant Harry F. Brown was Los Angeles manager of the corporation until Mr. Barthorpe's death, at which time Brown succeeded him as general manager. Both Barthorpe and Brown were receiving a salary of $600 plus a bonus of 15 per cent of the net profits of the corporation before taxes. When Brown became general manager, there was no change in compensation.

At the present time the stock of the corporation is held as follows: Respondent Barthorpe owns 90½ shares of common

---

*Assigned by Chairman of Judicial Council.

stock and 50 shares of preferred stock. Respondent Bar-
thorpe's daughter owns 4½ shares of common stock. Respond-
ent Jamison, as trustee for his father, holds 95 shares of
common stock. Mrs. Barthorpe holds her daughter's proxy.
Therefore, the respondents have under their control some 240
shares of corporate stock. Appellant Brown owns 50 shares
of common stock and 50 shares of preferred stock. Edward
Brown, his son, owns 30 shares of common stock, for which
his father holds the proxy. Harry Brown, Jr., another son of
appellant Brown, also owns 30 shares of common stock, for
which his father holds the proxy. The appellants, therefore,
have under their control some 160 shares of stock.

Until 1946 the articles of incorporation provided for a three-
member board of directors, but in that year by resolution of
the board the articles were amended to increase the number
of directors to four. The directors, at the time of the change,
were Mrs. Barthorpe, Harry Brown, and Edgar Jamison.
George Dellett was appointed the fourth director. In 1955
Robert H. Jamison succeeded to his father's position as
director.

The first meeting at which respondent Jamison was a
director was held on December 6, 1955. At that meeting
Mr. Brown was unanimously elected president. It was unani-
mously decided to postpone the election of a vice-president
until the next meeting. The nomination of Mrs. Barthorpe
for secretary-treasurer resulted in a tie vote, as did the
nomination of Mr. Dellett for secretary-treasurer, but as
Dellett was the incumbent secretary-treasurer he retained the
office for the year 1956. No decision was reached as to Brown's
and Dellett's compensation at that meeting. Mr. Brown moved
that a common stock dividend of 6 per cent of ½ of the book
value of the corporation as of the financial statement at the
close of business on November 30, 1955, be declared. The
vote on this motion was a tie. Mrs. Barthorpe moved that a
6 per cent dividend on the full book value as of November
30, 1955, be declared, and that Brown's bonus should be
reduced from 15 per cent to 10 per cent. This motion also
resulted in a tie vote, appellant Brown stating that the
corporation could not pay a dividend of such amount without
endangering its credit, and suggested a meeting in June, 1956,
to discuss the possibility of an extra dividend. No action was
taken. Appellant Brown moved that a 3 per cent dividend be
paid on December 30, 1955, and a like dividend on June 30,

1956, on the preferred stock. This motion carried with Jamison not voting.

A special meeting was held on January 28, 1956. By unanimous vote the amount of dividend to be paid on the common stock was carried. Robert Jamison was unanimously elected vice-president. A pension of $300 per month was voted for Edgar Jamison. A pension of $250 per month was voted for Mrs. Barthorpe. And an incentive payment of 15 per cent of the net profits before taxes was voted to Mr. Brown. This incentive payment was to be based on the yearly profits but was to be paid monthly on an amount equal to 90 per cent of the net profits each month with a year-end adjustment.

In November, 1956, respondent Jamison and his attorneys called upon Dellett at his home. Jamison attempted to persuade Dellett to vote for an amendment to the articles of incorporation to increase the authorized number of directors from four to five. During this meeting it was stated, according to the testimony, that Jamison intended to use a fifth director appointed by the court to amend the by-laws and that after such amendment they would dispose of such director and put in their own director.

The next regular meeting of the board of directors was held on December 4, 1956. The matters on which tie votes were cast were: (1) Election of president, Barthorpe and Brown being nominated, Brown, being the incumbent, retaining the office. (2) Election of secretary-treasurer, Ruffcorn, the attorney for respondents, and Dellett nominated, Dellett, the incumbent, retaining the office. The above positions are admittedly honorary in nature. (3) Barthorpe moved that the corporation declare a cash dividend of $100,000 to the holders of both common and preferred stock on the basis of $250 per share regardless of class. The Articles of Incorporation provide for a dividend of 6 per cent per annum on the preferred stock, which amount has never been exceeded. At the meeting Mrs. Barthorpe read a statement declaring that the corporation had available for distribution out of surplus a sum of not less than $100,000 and that she had been informed that the corporation was reaching or had reached a point where it might be subject to the penalties provided in the Internal Revenue Code relating to accumulated taxable income. Appellant Brown stated that such a payment would strip the corporation of needed funds for anticipated expenses and would require the dividend to be paid out of an amount considerably in excess of the corporation's net earnings after taxes

for the 1956 fiscal year. The $100,000 dividend proposed was almost three times as large as the next largest dividend ever paid by the corporation. (4) Appellant Brown moved for the adoption of a cash dividend of $75,000 with staggered payments. He stated that such amount was twice as large as any previous dividend paid by the corporation and represented all the net profits for the year 1956. By staggering the payment of such dividend the corporation could meet its obligations when they fell due. (5) Motions were made by respondents to reduce the salary of the general manager and increase the pensions given to Edgar E. Jamison and Elaine T. Barthorpe. In the discussion that followed it was stated that the method of paying the general manager had been effectively used since 1939 and had been unanimously affirmed at the last meeting. It was pointed out that the pensions might not be deductible in determining the income of the corporation for tax purposes. (6) Respondents each moved that they be employed by the corporation in executive capacities, although there was no opening at that time. (7) Respondent Barthorpe moved that the corporation's books of account for the years commencing January 1, 1941, and ending November 20, 1956, be audited by a certified public accountant who had not previously been employed by the corporation. Appellants claimed that such audit would be prohibitive in cost and that no reason or necessity for such an audit had been indicated. (8) A motion to amend the articles of incorporation to increase the number of directors from four to five also resulted in a tie vote.

Agreement was reached on the following matters: (1) Respondent Jamison was elected unanimously as vice-president. (2) A discussion on the expansion of the company's activities in the die set manufacturing field resulted in no action because it was felt that further consideration should be given to this proposal. (3) By unanimous vote a dividend of 6 per cent on the preferred shares was voted, payable 3 per cent on December 31, 1956, and 3 per cent on June 29, 1957.

Respondent Jamison called a special meeting of the board for December 8, 1956, notice of which was personally served on each director. Appellants Brown and Dellett did not appear at the meeting, and it was adjourned until December 22, 1956, at which time appellants Brown and Dellett were again absent. Thereafter, Jamison requested Brown to call

a board meeting for the day before the trial in the lower court, but no such meeting was called.

A special meeting of the board of directors was held after the trial on April 13, 1957. The provisional director appointed by the court was not present because of a stay granted by this court. At that meeting a general discussion was held concerning the Los Angeles office and a dividend of $75,000 was unanimously voted. A motion to increase the board of directors from four to five members resulted in a tie vote.

The appellants argue that section 819 of the Corporations Code is analogous to the appointment of a receiver, claiming that there is no significant difference between the two capacities, and that section 819 merely provides a new type of remedy in cases where a court would have previously appointed a receiver. Section 819 of the Corporations Code, insofar as it is here under consideration, provides, ''If a corporation has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that its business cannot longer be conducted to advantage or so that there is danger that its property and business will be impaired and lost, the superior court of the county where the principal office of the corporation is located may, notwithstanding any provisions of the articles or by-laws of the corporation and whether or not an action is pending for an involuntary winding up or dissolution of the corporation, appoint a provisional director pursuant to this section.

''.  .  .  .  .  .  .  .  .  .  .  .  .  .

''(b) . . . The provisional director shall be an impartial person, who is neither a shareholder nor a creditor of the corporation, nor related by consanguinity or affinity within the third degree to any of the other directors of the corporation, or to any judge of the court by which he is appointed. The provisional director shall have all the rights and powers of a director, and shall be entitled to notice of the meetings of the board of directors and to vote at such meetings, until the deadlock in the board of directors is broken or until he is removed by order of the court or by vote or written consent of the holders of a majority of the voting shares. He shall be entitled to receive such compensation as may be agreed upon between him and the corporation, and in the absence of such agreement he shall be entitled to such compensation as shall be fixed by the court.''

The appellants contend that before this section may be applied it must be shown that two conditions exist within the

corporation: (1) That the directors cannot agree as to the management of the corporation's affairs, and (2) that as a result of the disagreement (i) the business cannot be conducted to advantage, or (ii) there is danger that its property and business will be impaired and lost. They contend that the trial court's finding that these conditions exist as to Jamison Steel Corporation is erroneous as not being supported by the evidence, and, further, that the court could not exercise discretion under the code section, since it had no such power until both of the above conditions were satisfied. Since these conditions did not exist the court acted beyond its jurisdiction in exercising its discretion in appointing a provisional director. The appellants attempt to use the appointment of a receiver as an analogy to the remedy provided under Corporations Code, section 819, is not, we think, a fair analogy.

■ The appointment of a receiver is a more heroic remedy than that provided under the Corporations Code section here under consideration, since a receiver takes possession of all corporate property and assets and exercises complete control over all the affairs of the corporation including the management of its everyday business. The provisional director provided for under section 819, subdivision (b), is merely a director who is entitled to notice of board meetings and may vote at such meetings until an existing deadlock of the board is broken or until he is removed by court order or by vote or written consent of the holders of a majority of the voting shares. He is merely a director and has none of the plenary powers which are granted to a receiver.

■ The appointment of a receiver is a drastic remedy and is one which should not be invoked unless there is an actual or threatened cessation or diminution of the business. Furthermore, as is stated in *Sternberg* v. *Wolff*, 56 N.J. 555 [42 A. 1078, 1081-1082], "The idea of insolvency, actual or threatened, is so thoroughly associated in the minds of the public with the appointment of a receiver, that it is readily seen that many of the debtors of the concern would feel themselves absolved from any further obligation to pay. Then, also, we must consider the effect upon the general credit of the corporation of the appointment of a receiver, and I cannot but think it will seriously injure, if not destroy, its credit." ■ No such feeling among the debtors of a corporation would result from the appointment of a provisional director, which is merely a method of resolving disagreements between directors when there are an even number of directors

on a board. In *Golden State Glass Corp.* v. *Superior Court*, 13 Cal.2d 384, pages 393 and 394 [90 P.2d 75], it is said:

"It is established, however, that a court of equity has power to appoint a receiver of a going corporation upon a showing that there are such dissensions in its governing body as to create a virtual suspension of its business. . . . The rule which should govern such an appointment has been succinctly stated by Mr. Pomeroy as follows: 'The power of a court of equity to appoint a receiver of a corporation either because it has no properly constituted governing body, or because there are such dissensions in its governing body as to make it impossible for the corporation to carry on its business with advantage to its stockholders, appears to be settled; but it is equally well settled that this power is subject to certain limitations, namely, it must always be exercised with great caution, and only for such time and to such extent as may be necessary to preserve the property of the corporation and protect the rights and interests of its stockholders . . .' ''

A reading of section 819 of the Corporations Code reveals that it does not require such conditions to exist. In that case the court points out that the appointment of a receiver may well result in serious injury to the name and good will of a solvent, going concern, and that if there is any other adequate remedy, which is less severe and which will protect the rights of the parties, a court should not take the drastic step of appointing a receiver.

It is apparent that the remedy afforded by Corporations Code, section 819, is one which is available in situations which have not yet reached the point that a receiver should or could be appointed. It is a less severe remedy which is available to protect the rights of the parties and does not reflect upon the financial standing or good name of the corporation nor does it take the property out of the hands of the owners or the persons actually administering its business. There is a readily discernible difference between a corporation not able to conduct its business to advantage or being in danger of impairing and losing its property and a corporation which is in danger of cessation or diminution of operations. The facts recited in this opinion may well be taken as a model for the facts which will justify the invoking of the remedy provided by Corporations Code, section 819.

The appellants argue that the only evidence relevant to the trial court's finding that the directors were unable to agree as to the management of the corporation's affairs were in

the minutes of December 4, 1956, and that none of the motions on which tie votes were cast were directly concerned with the operation of the corporate business. They urge that the only matter which might deal with the management of the corporation was the question of the dividend and that the action taken at the April 13, 1957, meeting wherein a dividend was declared has rendered that point moot. We do not believe, however, that where an incumbent carries over in an office on the board of directors because of repeated tie votes as to the election of a person to that office, it can be said that this is not a matter which directly or indirectly affects the administration of a corporation.

The directors did select officers but by tie vote. Appellants overlook the fact that this is merely a perpetuation of incumbents in office and is certainly not a condition which is one that is healthy in a business enterprise. The nonattendance of appellants at the two special meetings, their refusal to discuss disagreements, and appellant Brown's refusal to call a third meeting when requested also lack much of reaching the level of administration that should be afforded in the management of a corporation. We do not feel that perpetuation of existing policies or incumbent officers in office can be construed as effectively managing corporate affairs. In our opinion the trial court acted within its jurisdiction and properly in appointing the provisional director.

Appellants also contend that the trial court erred in its finding that the corporation's business cannot be conducted to advantage and that its property and business is in danger of being impaired and lost, arguing that there is no evidence to support such finding.

This argument fails when it is considered that the testimony indicates that unless a $100,000 dividend was declared the corporation might suffer penalties under the Federal Tax Statutes. Appellants seek to meet this argument by stating that the $75,000 dividend voted after the trial removed this danger to the corporation, and that, therefore, the deadlock existing is broken and the reason for a provisional director no longer exists and he should be removed. The position of appellants in this regard would appear to be somewhat didactic, since it is also apparent from a reading of the record that a disagreement exists over the payment of the general manager's salary that is of sufficient consequence that it might impair the corporation's property.

38

■ Appellants object to a hypothetical question, which was asked, and the answer given to such question. They contend that such question assumed a type of business different from that of Jamison Steel Corporation, since it assumed a flat salary rather than a bonus arrangement. They argue that the compensation is not a matter of deadlock, but resulted from the unanimous action of the board at a previous meeting, and that the salary cannot cause a loss to the corporation, since only nominal payments are made unless the corporation makes a profit. That the board of directors might well change its mind after having previously fixed a salary would seem so evident as to require no comment. The fact that the hypothetical question complained of did not perhaps exactly outline the type of business conducted by Jamison Steel Corporation does not, for that very reason, disqualify the question or the answers given thereto from some consideration by the trial court. We must assume that the court properly applied the expert's opinion, which was given in response to the question.

■ Where the two principal stockholders of a corporation are dissatisfied with the method of payment of its principal employee that appears to be a matter of interest and importance to the corporation. Furthermore, the fact that respondent Barthorpe did not trust the audit made of the corporation's books nor approve of the fact that appellant Brown's wife owned the building occupied by the corporation in Los Angeles and has increased the rent thereon several times without informing the board and, further, that appellant Brown had hired his son as an assistant, paying him $11,000 a year without consulting the board, would appear to show that there is not such unanimity of action by the board of directors as to render a provisional director under the provisions of the Corporations Code section here under consideration unnecessary.

It seems evident that possible excessive rent charges and employment of a member of the family as an assistant might well result in a monetary loss to the corporation and thus threaten a loss of its property. It is our opinion that the effect of all of the evidence before the trial court is sufficient to support its finding that the corporation's business cannot be conducted to advantage and that its business and property is in danger of being impaired and lost.

■ Appellants urge that the doctrine of estoppel or the doctrine of unclean hands should apply as to the respondents

in this case, since, they contend, the tie votes were a device used by respondents for the sole purpose of procuring the appointment of the provisional director and of ultimately obtaining control of the corporation. In support of this position they cite the testimony of Mrs. Dellett that Jamison, through his attorneys, stated he would get control of the company. They also state that the very nature of the motions made by respondents shows that they were not made in good faith. The factual situation presented by the record before us shows clearly that both sides have refused to compromise until such time as urgent necessity has required some action by them. The appellants, by refusing to attend board meetings and refusing to call meetings when requested, are in no position to complain of the acts of respondents. █ Furthermore, we feel that the doctrine here sought to be invoked has no application under section 819 of the Corporations Code. The question before the court is whether there is a deadlock and not why such deadlock may exist. To place upon a court the burden of determining one's reason for voting on certain matters would be to impose a burden that would be almost impossible of fulfillment.

When it is considered that the respondents are the majority shareholders, it is not surprising that they might well be discontented with a situation whereby they are denied a controlling voice in the operation of the corporation. Whether or not respondents exercised good faith in proposing motions and in casting their votes was a matter before the trial court. This court cannot invade that court's province in that respect. In the record adequate reasons for proposals made by the respondents were given. So long as their personal interest did not harm the corporation it would seem that such interest might well be an adequate reason for justifying their conduct here. Appellants also mention that the respondents should be estopped to complain since they voted for a four-man board and should have known that deadlocks could and would arise in such a case. The argument is somewhat weakened when the composition of the board at the time it was voted to change the number of directors from three to four is viewed, since appellant Brown is the only person now a director who voted to change the number of directors from three to four.

█ Appellants argue that the trial court erred in giving the provisional director uncontrolled authority to vote for an amendment to the articles of incorporation, and argue that the appointment of a provisional director with such broad

powers is tantamount to the appointment of respondent's nominee rather than an impartial person. This position, however, assumes that the provisional director will not conscientiously and fairly perform his duties as a court-appointed officer, and the language of section 819, subdivision (b), which reads: ". . . The provisional director shall have all the rights and powers of a director, and shall be entitled . . . to vote at such meetings, until the deadlock in the board of directors is broken or until he is removed by order of the court or by vote or written consent of the holders of a majority of the voting shares . . .," makes it patent that the Legislature intended to grant the provisional director all of the powers ordinarily exercised by other directors. Furthermore, it is within reasonable possibility that the provisional director may well feel that the business of the corporation does not require an uneven number of directors, but that the differences between the parties may be adjusted.

The judgment appealed from is affirmed, and the stay under writ of supersedeas, which has been heretofore granted, is vacated.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 28, 1958. Appellants' petition for a hearing by the Supreme Court and for a writ of supersedeas was denied April 23, 1958.